**OLD BEN COAL CO., Petitioner,**

v.

**Warren BATTRAM and Director, Office of Workers' Compensation Programs, Respondents.**

No. 92–3809.

United States Court of Appeals, Seventh Circuit.

Argued July 8, 1993.

Decided Oct. 6, 1993.

Wayne Reynolds (argued), Belleville, IL, for petitioner.

Eileen M. McCarthy, Donald S. Shire, Sol. Gen., Steven D. Breeskin, Marta Kusic (argued), C. William Mangum, Dept. of Labor, Office of the Sol., Washington, DC, John H. Secaras, Sol. Gen., Dept. of Labor, Chicago, IL, Louis W. Rogers, Dept. of Labor, Office of Workers' Compensation Program, Washington, DC, Jack N. Van Stone, Evansville, IN, for respondents.

Lisa L. Lahrman, Benefits Review Bd., Executive Counsel, Clerk of the Bd., Washington, DC, for party-in-interest Benefits Review Bd.

Before CUDAHY and KANNE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

CUDAHY, Circuit Judge.

Battram worked as a mine mechanic for the Old Ben Coal Company (the employer) and its predecessor from December 1947 until April 1978. On September 14, 1979, Battram filed an application under the Black Lung Benefits Act (the Act) with the Department of Labor (the Department). 30 U.S.C. §§ 901–945. Since that time, five different tribunals have reviewed his case. A Deputy Commissioner from the Department initially determined that Battram was entitled to benefits in 1980. An Administrative Law Judge (ALJ) then reviewed the Deputy Commissioner's findings and remanded the case for further fact-finding. On remand, the Deputy Commissioner again recommended benefits, and the employer contested the findings. The ALJ finally awarded benefits in 1989, and the Benefits Review Board (the Board) affirmed in 1992.

Both Battram and his wife died during the pendency of this case. Despite their deaths, Old Ben and the Department remain interested parties because the Department paid benefits to Battram while Old Ben's appeals were pending. Old Ben must reimburse the Department unless it prevails in this appeal.

## I. THE STATUTORY SCHEME

The Black Lung Benefits Act aids "coal miners who are totally disabled due to pneumoconiosis." 30 U.S.C. § 901. The Act defines "pneumoconiosis" as any "chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902.

Because the Black Lung Act has evolved through several statutory enactments, different rules govern claims filed at different times. *Mullins Coal Co. v. Director, Office of Workers' Compensation Programs*, 484 U.S. 135, 139, 108 S.Ct. 427, 430, 98 L.Ed.2d 450 (1987). Claims, like Battram's, that were filed between July 1, 1973 and April 1, 1980, follow the "interim regulations" promulgated in 20 C.F.R. § 727.

Section 727 requires employers to pay benefits to miners who suffer from total disabili-

ties, caused, at least in part, by pneumoconiosis and arising out of coal mine employment. 20 C.F.R. § 727; *see also Mullins*, 484 U.S. 135, 108 S.Ct. 427. This section presumes that living miners[1] meet these requirements for benefits if they have worked for more than ten years in the mines and they produce either: (1) chest x-rays establishing the presence of pneumoconiosis, (2) ventilatory studies showing the existence of a respiratory ailment of a specified severity, (3) blood gas studies showing an impairment, or (4) other medical evidence showing a disabling respiratory or pulmonary impairment. 20 C.F.R. § 727.203(a). The employer may rebut this interim presumption by showing: (1) that the claimant is doing his usual or comparable work, (2) that he is capable of doing his usual or comparable work, (3) that his disability did not arise from coal mine employment, or (4) that the miner does not have pneumoconiosis. 20 C.F.R. § 727.203(b).

## II. ANALYSIS

■ Although this appeal comes to us from a decision of the Benefits Review Board, this court reviews the decision of the ALJ, not of the Board. *Dotson v. Peabody Coal Co.*, 846 F.2d 1134, 1137 (7th Cir.1988). We must determine whether the ALJ's decision is rational, supported by substantial evidence and consistent with the governing law. *Old Ben Coal Co. v. Luker*, 826 F.2d 688, 691 (7th Cir.1987). While this court may not reweigh the evidence or substitute its own judgment for that of the ALJ, *Meredith v. Bowen*, 833 F.2d 650, 653 (7th Cir.1987), we must carefully review the record and the ALJ's findings. The "ALJ must consider all relevant medical evidence, cannot substitute his expertise for that of a qualified physician, and absent countervailing clinical evidence or a valid legal basis for doing so, cannot simply disregard the medical conclusions of a qualified physician." *Wetherill v. Director, Office of Workers' Compensation Programs*, 812 F.2d 376, 382 (7th Cir.1987).

A. *The presumptions invoked under § 727.203(a)*

■ The ALJ found that Battram had invoked the presumptions for benefits under

---

**1.** Battram was alive at the time that the ALJ    decided his case.

both § 727.203(a)(1) and § 727.203(a)(2). Battram, who worked in the mines for more than ten years, invokes the presumption under subpart (a)(1) if he produces x-ray evidence establishing the existence of pneumoconiosis. He does so under subpart (a)(2) if ventilatory studies show a respiratory or pulmonary disorder. Where the parties produce a number of ventilatory studies, or where multiple doctors read the tests, the ALJ must decide whether the preponderance of the evidence weighs in favor of the miner or the employer. *Mullins*, 484 U.S. at 159, 108 S.Ct. at 440.

### 1. The pulmonary function studies.

■ Both parties agree that the ALJ misassessed the pulmonary function studies. A pulmonary study invokes the presumption under 20 C.F.R. § 727.203(a)(2) if it is both qualifying and conforming. A pulmonary study "qualifies" if its results are equal to or less than the values set forth in 20 C.F.R. § 727.203(a)(2). The study "conforms" if it complies with applicable quality standards. 20 C.F.R. § 410.430.

At the time of the hearing, Battram had participated in six pulmonary studies. Because five of these studies were unquestionably non-conforming, the ALJ relied only upon a study from April 30, 1987. Although several doctors had also raised questions about the conformity of the April 1987 study, the ALJ never addressed the doctors' concerns. He noted only that the "test was found to be valid by three of the four" experts.

This rather simplistic assessment of the evidence ignored serious criticisms of the study. While three of the four doctors found at least parts of the study passable, two of these three approving doctors criticized different aspects of it. Thus, Doctor Stewart found the spirometry portion of the test valid but the MVV portion invalid, and Doctor Renn noted that the "prebronchodilator FVC maneuvers do not correlate, one with the other." A fourth doctor, Doctor Castle, found the entire test invalid because only two spirometric tracings appeared on the graph of the test although the regulations require three. *See* 20 C.F.R. § 410.430.

The ALJ should have "address[ed] the valid contentions raised by [these] consulting physicians and indicate[d] explicitly" why he rejected them. *Zeigler Coal Co. v. Sieberg*, 839 F.2d 1280, 1284 (7th Cir.1988). As we have held previously, an ALJ must discuss all the evidence contrary to his decision, including criticisms of ventilatory studies. *Dotson*, 846 F.2d at 1138; *Strako v. Zeigler Coal Co.*, 3 B.L.R. 1–136, 1–143 (1981).

### 2. The x-ray evidence.

Although the ALJ's assessment of the pulmonary studies may have been wanting, Battram may still invoke the presumption under § 727.203(a)(1) if the x-ray evidence establishes the existence of pneumoconiosis.

The ALJ's opinion discussed all four of the x-rays of record. He gave little weight to x-rays from November 2, 1979 and February 12, 1980, finding that their age limited their evidentiary value. *See Consolidation Coal Co. v. Chubb*, 741 F.2d 968, 973 (7th Cir.1984) (ALJ may assign the most weight to an x-ray that was three years newer than the other x-rays of record). He then turned to the x-rays from July 2, 1984 and September 13, 1984. Because the record contained sixteen different readings of these two x-rays, the ALJ gave the most weight to readings by B-readers[2] and board-certified radiologists. *See Freeman United Coal Mining Co. v. Office of Workers' Compensation Programs*, 988 F.2d 706, 709 (7th Cir.1993) (ALJ may attach greater weight to the opinions of board-certified radiologists and B-readers). The ALJ noted that five B-readers, three of whom were board-certified radiologists, read the July 1984 x-ray as negative and that one board-certified B-reader read that x-ray as positive. Six B-readers, four of whom were board-certified, interpreted the September x-

---

**2.** A "B-reader" is "a physician who has demonstrated proficiency in evaluating chest roentgenograms for roentgenographic quality and in the use of the ILO–U/C classification for interpreting chest roentgenogram for pneumoconiosis and other diseases by taking and passing a specially designed proficiency examination given on behalf of or by the Appalachian Laboratory for Occupational Safety and Health." 20 C.F.R. § 718.-202(a)(1)(ii)(E).

ray as negative. Two B-readers, one of whom was board-certified, found the x-ray positive.

The ALJ recognized that more doctors provided negative readings of the most recent two x-rays, but he stressed that "the doubt created by two B-readers disagreeing over whether an x-ray is positive or negative for pneumoconiosis is not mitigation [sic] by an additional number of B-readers supporting either side." Finding the evidence in favor of the miner and of the employer equally probative, the ALJ applied the "true doubt" rule, which gives the miner the benefit of any doubt.

■ The ALJ's decision to apply the true doubt rule is the only area of real contention between the parties. The ALJ properly applied the rule if, in fact, equally strong evidence supported both the miner and the employer.[3] *See Freeman*, 988 F.2d 706. As *Freeman* holds, "when equally probative but contradictory evidence is presented in the record and selection of one set of facts results in a finding for the claimant and the other leads to a finding against the claimant, the evidence must be resolved in favor of the claimant." *Id.* Old Ben argues that the ALJ erred by applying the true doubt rule in a case where a clear majority of the experts supported the employer's position.

The federal courts have developed standards for weighing cumulative opinions that are in conflict with other opinions. While our cases recognize numerical disparities as a relevant factor in the ALJ's analysis, *see Cook v. Director, Office of Workers' Compensation Programs*, 816 F.2d 1182, 1185 (7th Cir.1987); *Edmiston v. F. & R. Coal Co.*, 14 B.L.R. 1–65 (1990), they are also critical of decisions based entirely upon "head counts" of experts. *Adkins v. Director, Office of Workers' Compensation Programs*, 958 F.2d 49, 52 (4th Cir.1992). As this court explained in *Freeman United Coal Mining Co. v. Benefits Review Board*, 879 F.2d 245, 248 (7th Cir.1989), "[t]he ALJ is not bound to invoke the presumption merely because of numerical superiority of the positive readings, but if the ALJ discounts two positive readings in favor

of one negative reading some rational explanation is required."

■ In Battram's case, the ALJ provided an at least marginally adequate explanation for his decision. He noted that equally-qualified doctors had provided different assessments of the same x-rays. The ALJ had no way to comparatively evaluate these opinions because none of the doctors provided a detailed explanation of his findings. This state of affairs opened two possibilities for the ALJ: he could have found for the employer, based only upon a "head count" of the experts, or he could have found the evidence equally probative. We believe that the ALJ, in following the second possibility, took a defensible course of action.

Instead of broadening its focus to include all of the ALJ's opinion, Old Ben argues that one sentence of the opinion misstates the law. The ALJ allegedly invoked a novel legal standard when he stated that "[t]he doubt created by two B-readers disagreeing over whether an x-ray is positive or negative for pneumoconiosis is not mitigat[ed] by an additional number of B-readers supporting either side." Old Ben claims that this so-called "non-mitigation" rule could create perverse results because, under the rule, one positive x-ray could overcome heavily supported contrary evidence. After the positive x-ray was put into evidence, nothing could outweigh it, including heavily probative evidence supporting the employer.

Although we agree that the ALJ's statement, in the abstract, could support the employer's interpretation, the rest of the ALJ's decision adequately supports its legitimacy. Later in his opinion, the ALJ clarified the contested statement by "emphasiz[ing] that 'piling on' B-readers holding a particular interpretation does not *automatically* add weight to that interpretation." [emphasis added]. This additional observation comports with our caselaw, which is critical of the automatic invocation of blanket rules. Our cases permit the ALJ to side with the majority or the minority only after carefully

---

**3.** Old Ben has asked us to reexamine the validity of the true doubt rule, but we decline to do so in light of *Freeman*, our recent case upholding the use of the rule.

weighing the evidence. *Freeman,* 879 F.2d at 248.

We note, however, that it would not be permissible for an ALJ to apply a "non-mitigation" rule as described by Old Ben. A single positively interpreted x-ray does not automatically trump any number of negative readings. The ALJ must attempt to evaluate opinions by considering the age of the x-ray readings, the qualifications of the experts, the persuasiveness of their reports and any other relevant evidence. Because the ALJ in Battram's case apparently considered these factors before finding the evidence to be in equipoise, we may accept his invocation of the presumption.

### B. *Rebuttal under § 727.203(b)*

■ Old Ben claims that, under § 727.-203(b)(3), it can rebut the presumption created by the x-ray evidence.[4] Subsection (b)(3) allows the employer to counter the presumption by showing "that the total disability of the miner did not arise in whole or in part out of coal mine employment." A disability arises out of coal mine employment if the miner's occupation is a contributing cause of the disability. *Wetherill,* 812 F.2d at 380.

The ALJ denied rebuttal under § 727.-203(b)(3) because three doctors, Dr. Wilhelmus, Dr. Stewart and Dr. Houser, had linked Battram's illness to his work in the mine. He found Dr. Houser's opinion "particularly persuasive." The ALJ also noted that three doctors had found no relationship between Battram's malady and his employment, but that one of these doctors had based his decision on a questionable assumption.

■ Old Ben first criticizes the ALJ's reliance on medical reports from Dr. Wilhelmus and Dr. Stewart. Old Ben claims that Dr. Stewart's report contains ambiguities and that Dr. Wilhelmus's report actually reinforces the employer's position. We agree that the reports contain ambiguities and inconsistencies, but these are not decisive. When medical reports contain such problems, we defer to the ALJ, who bears the responsibili-

ty for assessing and weighing conflicting evidence. *Shelton v. Old Ben Coal Co.,* 933 F.2d 504, 507 (7th Cir.1991). Even if this court might have interpreted the evidence differently in the first instance, it must now accept the ALJ's reading if that interpretation is supported by substantial evidence and is not irrational. In this case, the ALJ provided an acceptable reading of the evidence.

■ Old Ben also claims that the ALJ disregarded two medical reports. The first report, by Dr. L. Dayson, diagnosed Battram as having "smoker's lung." This diagnosis, however, does not rule out pneumoconiosis as a contributing cause of the miner's disability. As we have recognized in other cases, miners who smoke may suffer complications from both smoking and mine work. *Shelton v. Director, Office of Workers' Compensation Programs,* 899 F.2d 690, 692–93 (7th Cir. 1990). Because Dr. Dayson never discussed mining-related disorders or Battram's work in the mine, his report has little probative value.

■ The ALJ also rejected a medical report from Dr. Selby. Although Dr. Selby never commented on whether Battram's employment was a contributing cause of his disability, Old Ben claims that two of Dr. Selby's findings support its position. It points, first, to Dr. Selby's comment that Battram was "not totally disabled as a result of coal workers' pneumoconiosis arising out of his employment with Old Ben Coal Company." Battram's employment, however, need not cause his "total" disability; it need only contribute to it. *Freeman United Coal Mining Co. v. Benefits Review Board,* 919 F.2d 451, 454 (7th Cir.1990). Dr. Selby also found, in one portion of his report, that "Mr. Battram suffers no pulmonary or respiratory impairment." The ALJ properly disregarded this finding because it conflicted with a diagnosis found elsewhere in Dr. Selby's report. On a page entitled "pulmonary interpretation report," Dr. Selby diagnosed "a mild obstructive lung defect."

---

4. The parties also discuss § 727.203(b)(4) in their briefs, but they both agree that the employer cannot rely on § 727.203(b)(4) if the ALJ invokes the presumption under § 727.203(a)(1). *Mul-*

*lins,* 484 U.S. at 150, 108 S.Ct. at 435; *Chubb,* 741 F.2d at 974; *Buckley v. Director, O.W.C.P.,* 11 B.L.R. 1–37 (1988). For this reason, we decline to address § 727.203(b)(4) here.

### III. CONCLUSION

Finding no reversible error in the ALJ's analysis, we DENY Old Ben's petition for review.