**ZEIGLER COAL COMPANY, Petitioner,**

v.

**OFFICE OF WORKERS' COMPENSATION PROGRAMS and Frank Lemon, Respondents.**

No. 93–1131.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 7, 1994.

Decided May 11, 1994.

Rehearing and Suggestion for Rehearing In Banc Denied Aug. 5, 1994.

Mark E. Solomons (argued), Laura M. Klaus, Arter & Hadden, Washington, DC, for petitioner.

Donald S. Shire, Sol. Gen., Marta Kusic, C. William Mangum (argued), Christian P. Barber, Dept. of Labor, Office of the Sol., Washington, DC, for Office of Workers Compensation Programs.

Rebecca J. O'Neill (argued), Southern Illinois University School of Law, Carbondale, IL, for Frank Lemon.

Lisa L. Lahrman, Benefits Review Bd., Executive Counsel, Clerk of the Bd., Washington, DC, for Benefits Review Bd.

Before COFFEY, FLAUM and MANION, Circuit Judges.

COFFEY, Circuit Judge.

The Zeigler Coal Company ("Zeigler") appeals from a decision by the Benefits Review Board ("Board") affirming the Administrative Law Judge's ("ALJ") award of Black Lung Benefits to respondent Frank Lemon ("Lemon"). We reverse and remand for further findings.

## I. Background

Lemon worked more than 40 years as a coal miner before retiring in January of 1980. A few days later he filed for benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901, et seq. The Department of Labor reviewed Lemon's claim and administratively denied benefits on the ground that Lemon had failed to establish that he suffered from pneumoconiosis. Thereafter, Lemon obtained counsel and requested additional time in which to submit evidence in support of his claim. The Labor Department referred Lemon's claim to the Office of Administrative Law Judges for a formal hearing. At this hearing, an Administrative Law Judge ("ALJ") reviewed evidence concerning the claimant's: (1) pulmonary function tests; (2) arterial Blood Gas Test; and (3) two chest X-rays. In his Decision and Order Awarding Benefits, the ALJ determined that "the claimant's proof in this case rests upon the x-ray evidence since qualifying values were not obtained in any of the pulmonary function or blood gas studies of record." He went on to find that there were "three" x-rays of record dated March 10, 1980; September 14, 1981; and September 22, 1981. The ALJ concluded that although the first two x-rays "do not support a finding of pneumoconiosis," a positive reading of "the September 22, 1981 x-ray" was sufficient to invoke the interim presumption of entitlement to benefits that is provided by 20 C.F.R. § 727.203(a)(1).

On appeal to the Benefits Review Board ("Board"), Zeigler pointed out that the purported "September 22, 1981 x-ray" upon which the ALJ stated he was relying does not in fact exist. Zeigler states that there were only two x-rays of record, one taken on March 10, 1980, and one taken on September 14, 1981. After examining the evidence, the Board concluded that the purported "September 22 x-ray" upon which the ALJ stated he was relying was not a separate x-ray but merely a rereading of the September 14 x-ray. The Board therefore reversed and remanded "for a proper weighing of the x-ray evidence."

In its Decision and Order on Remand, the ALJ again awarded benefits, this time ruling that the x-ray evidence was "evenly balanced" and that the claimant was thus entitled to the presumption of entitlement to benefits under the theory of the "true doubt rule." On appeal, the Board affirmed upon determining that the ALJ had "permissibly applied the true doubt rule" to resolve the conflicting x-ray evidence in the claimant's favor.

## II. Issues

We are asked to determine whether the "true doubt rule" is invalid as an unauthorized supersedure of the Administrative Procedure Act and whether the ALJ's finding that the x-ray evidence was evenly balanced is supported by substantial evidence.

## III. Discussion

Since Lemon had more than ten years of coal mining employment and filed his claim

between July 1, 1973, and April 1, 1980, his case is governed by the "interim regulations" set forth in 20 C.F.R. § 727. *Freeman United Coal Mining Company v. OWCP,* 20 F.3d 289, 291 (7th Cir.1994) (*citing Mullins Coal Co. Inc. v. OWCP,* 484 U.S. 135, 137–38, 108 S.Ct. 427, 428–29, 98 L.Ed.2d 450 (1987)). Under this regulation, § 727.203(a), a claimant will be presumed to be entitled to Black Lung Benefits if he (1) establishes that he worked in the coal mines for more than ten years and (2) produces one of several types of medical evidence showing that he suffers from a disabling respiratory or pulmonary impairment.[1] Once this presumption is triggered, the burden of proof shifts to the employer who must rebut the presumption by showing that (1) the miner is performing his usual or comparable work, or (2) the miner is capable of performing his usual or comparable work, or (3) the miner's disability did not arise from coal mine employment, or (4) the miner does not suffer from pneumoconiosis. 20 C.F.R. § 727.203(b).

Zeigler does not contest the ALJ's finding that it failed to rebut the presumption of entitlement; rather the company argues that, contrary to the ALJ's finding, Lemon was not entitled to the presumption in the first place because the medical evidence fails to establish that he suffers from a disabling respiratory or pulmonary impairment arising out of coal mine employment for a period of at least ten years.

Although this is an appeal from the decision of the Board,

"we actually review the decision of the ALJ, asking whether it is supported by substantial evidence, is in accord with the law, and is rational. *Peabody Coal v. Helms,* 859 F.2d 486, 489 (7th Cir.1988). Substantial evidence is "such relevant evidence as a rational mind might accept as adequate to support a conclusion."

*Amax Coal Co. v. Beasley,* 957 F.2d 324, 327 (7th Cir.1992).

The record discloses that Lemon's family physician did not submit a report for this litigation, and that the claimant has not been treated for any lung disease. Moreover, the parties agree that the claimant's pulmonary function tests and arterial blood gas test failed to meet the qualifying standards sufficient to trigger the interim presumption.[2] The ALJ's determination that the claimant was nevertheless entitled to the § 727 presumption thus was premised solely on his application of the true doubt rule to resolve the conflicting x-ray evidence in favor of the claimant.

Lemon had but two chest x-rays, the first taken on March 10, 1980, at the Department of Labor's ("DOL") request, and the second taken on September 14, 1981, at the claimant's request. Dr. Norman Shippey, a board-certified radiologist, found the 1980 x-ray to be negative for pneumoconiosis. DOL had this x-ray re-read by Dr. J. Gordonson, a board-certified radiologist and a "B" reader,[3] and Dr. Gordonson also found the x-ray to be negative for pneumoconiosis. At Lemon's request, the 1981 x-ray was read by Dr. Brent Brandon, a board-certified radiologist and "B" reader and thereafter re-read by Dr. T.R. Marshall, also a board-certified radiologist as well as a "B" reader. Both of these

---

1. The regulation allows the claimant to present the following types of medical evidence:

   (1) A chest roentgenogram (X-ray), biopsy, or autopsy ...;

   (2) Ventilatory studies ...;

   (3) Blood gas studies ...;

   (4) Other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment ...;

   (5) In the case of a deceased miner where no medical evidence is available, the affidavit of the survivor of such miner or other persons with knowledge of the miner's physical condition....

   20 C.F.R. § 727.203(a).

2. According to the testimony of three pulmonary disease specialists, these tests showed a normal pulmonary capability and response to exercise. Each expert also independently determined that, in their opinion, the test results did not indicate that Lemon was fully cooperative or exerting his maximum effort in the course of his pulmonary function testing.

3. A "B-reader" is a "physician who has demonstrated proficiency in assessing and classifying X-ray evidence of pneumoconiosis by successful completion of an examination conducted by or on behalf of the Department of Health and Human Services." *Freeman Coal, id.* at n. 4 (quoting *Mullins,* 484 U.S. at 145 n. 16, 108 S.Ct. at 433 n. 16).

physicians were of the opinion that this second x-ray was positive for pneumoconiosis. Zeigler requested that this second x-ray, the subject of the controversy, be re-read and submitted the X-ray to three other physicians: (1) Dr. Barton Bridges, a board-certified radiologist and "B" reader; (2) Dr. Joseph Renn, a board-certified pulmonary specialist and "B" reader; and (3) Dr. E.J. Morgan, a board-certified pulmonary specialist and "B" reader. These three "B" readers independently determined that the second x-ray was completely negative for pneumoconiosis. Thus the x-ray evidence before the ALJ consisted of the 1980 x-ray (two negative "B" readings, zero positive readings) and the 1981 x-ray (three negative "B" readings, two positive "B" readings).

■ Zeigler contends that the ALJ erred both in determining that the above x-ray evidence was equally balanced and in applying the "true doubt rule" to resolve the conflict in Lemon's favor. The "true doubt rule" is a Board-created rule approved by this court in *Freeman United Coal Mining Co. v. Office of Workers' Compensation Programs,* 988 F.2d 706, 709 (7th Cir.1993), *reh'g en banc denied,* 999 F.2d 291 (7th Cir.1993), *petition for cert. filed,* (Dec. 10, 1993). The rule operates to give the miner the benefit of the doubt when the evidence in favor of the miner and of the employer is "equally probative." *Old Ben Coal Co. v. Battram,* 7 F.3d 1273, 1277 (7th Cir.1993). Thus,

> "when equally probative but contradictory evidence is presented in the record and selection of one set of facts results in a finding for the claimant and the other leads to a finding against the claimant, the evidence must be resolved in favor of the claimant."

*Freeman,* 988 F.2d at 710 (citations omitted). Although Zeigler invites us to discard this rule as contrary to the preponderance of the evidence standard contained in Section 7(c) of the Administrative Procedure Act, 5 U.S.C. § 556(d), we decline to consider the argument at this time in light of our most

recent contrary holding in *Freeman.*[4] But while we have endorsed the true doubt rule as a means of breaking "evidentiary gridlock" in black lung cases, *id.,* the rule obviously has no role to play in the vast majority of cases where there is in fact no true gridlock. As the Fourth Circuit has observed:

> "Very seldom will the evidence in support of and against entitlement be *equally* probative and *equally* persuasive. Indeed, it would seem to be the unusual case in which an ALJ intent on properly weighing the competing evidence, will come to the conclusion that neither side's evidence was slightly more convincing than the other's."

*Grizzle v. Pickands Mather & Co.,* 994 F.2d 1093, 1096–97 (4th Cir.1993) (citations omitted).

■ As noted heretofore, the ALJ somehow determined that the five negative readings in this case were *equally* balanced by the two positive readings. In support of this conclusion, the ALJ wrote that the passage of 18 months between the 1980 x-ray that received uniformly negative readings and the 1981 x-ray that received conflicting readings was "significant in the development of pneumoconiosis." Second, he stated that he considered "as a medical fact that the clear x-ray (like that of March 10, 1980) is not as reliable an indicator of the absence of pneumoconiosis as a positive x-ray is of its presence."

Initially, we note that Lemon retired from the mines and thus ended his exposure to coal dust in early January 1980, and that the uncontradicted medical evidence is that two months later, on March 10, 1980, the claimant still showed no medical signs of pneumoconiosis. In deciding that this x-ray evidence was entitled to little if any weight, the ALJ apparently assumed (without citing to any medical evidence) that pneumoconiosis is a progressive disease of the sort that might well remain undetectable until long after the patient exposures to coal dust are terminated. The record contains no scientifically or medically acceptable support for the ALJ's theory.

---

4. We note that the Supreme Court has agreed to review whether the true doubt rule is appropriate under the Black Lung Benefits Act or the Administrative Procedure Act. *See Greenwich*

*Collieres v. OWCP,* 990 F.2d 730 (3rd Cir.1993), *cert. granted,* —— U.S. ——, 114 S.Ct. 751, 127 L.Ed.2d 69 (1994); *Freeman Coal,* at 295 n. 5.

Although the ALJ viewed the evidence as pitting an earlier "clear" x-ray against a later "positive" x-ray, there is no evidence in the record to support the ALJ's conclusion that the two positive readings of the 1981 x-ray outweigh its three negative readings so as to transform it into a "positive x-ray." While our opinions have been critical of decisions based entirely on "head counts" of experts, *Old Ben Coal Co.*, 7 F.3d at 1277, we also have held that "a single positively interpreted x-ray does not trump any number of negative readings." *Id.* at 1278. In addition to considering all the other medical evidence in the record, the ALJ must attempt to weigh x-ray readings "by considering the age of the readings, the qualifications of the experts, the persuasiveness of their reports and any other relevant evidence." *Id.*

Here, the first factor listed by the court in *Old Ben*—the age of the x-ray reading—is of no help, because all of the conflicting readings concerned the same September 1981 x-ray. Neither do the qualifications of the experts appear significantly different, as each of the experts was a certified "B" reader. On the other hand, the record discloses that the ALJ failed to consider either of the final two criteria listed in *Old Ben*—the persuasiveness of the experts' reports and any "other relevant evidence." Regarding the latter omission, we note that the ALJ did not have before him any other relevant evidence from the many approved medical tests and criteria to overcome the conflicting x-ray readings. *See Collins v. Director, OWCP*, 932 F.2d 1191, 1194 (7th Cir.1991) (Coffey, J., concurring) ("pulmonary function tests, including spirometry, blood gas . . . and other diagnostic and pulmonary testing devises" permit one to "conclusively differentiate and determine that a miner is suffering from black lung disease rather than a myriad of other unrelated respiratory problems such as emphysema, asthma, tuberculosis, pneumonia, chronic bronchitis or asbestosis to mention a few"). As noted before, the record does not even contain a report from the claimant's treating physician.

## IV. Conclusion

As we review the ALJ's ruling under the substantial evidence standard, "we must take into account any evidence in the record fairly detracting from that decision, and we must reverse where we 'cannot conscientiously find that the evidence supporting that decision is substantial.'" *Amax Coal*, 957 F.2d at 328 (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464–65, 95 L.Ed. 456 (1951)). We are of the opinion that this is such a case. The paucity of medical evidence in this case, consisting solely of five negative x-ray readings and two positive readings, fails to rise to the level of "substantial evidence" needed to support a finding that the claimant is entitled to black lung benefits. Although the claimant has, as yet, failed to put forth substantial evidence demonstrating his entitlement to benefits, we believe he is entitled to pursue further testing, i.e., ventilatory studies, blood gas studies and other diagnostic and pulmonary testing, so that he might be given an opportunity to establish the required standard of proof (substantial evidence) of his alleged pneumoconiosis. *See* 20 C.F.R. § 727.203(a). We reverse and remand for further findings before a different ALJ. *See* Circuit Rule 36.

REVERSED.