114 F.3d 1192
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
PEABODY COAL COMPANY, Petitioner,
v.
Donald S. KIRKLING and Director, Office of Workers'
Compensation Programs, United States Department of
Labor, Respondents.
 No. 96-2381.
 United States Court of Appeals, Seventh Circuit.
 Submitted May 7, 1997.*
Decided May 7, 1997.
 
 Before FLAUM, MANION and EVANS, Circuit Judges.
 
 ORDER
 
 1
 Donald S. Kirkling, a coal miner, sought and received benefits pursuant to the Black Lung Benefits Act, 30 U.S.C. § 901 et seq. His former employer, Peabody Coal Company, petitions this court to review the decision and order of the Benefits Review Board (BRB) affirming the Administrative Law Judge's (ALJ) award. Peabody challenges the award based on: (1) the ALJ's reliance on the "true doubt" rule, which was recently invalidated by the Supreme Court in Director, OWCP v. Greenwich Collieries, 512 U.S. 267, 280 (1994); (2) the ALJ's accordance of greater weight to the treating doctor's opinion; (3) the ALJ's finding of total disability; and (4) the ALJ's finding that pneumoconiosis (black lung disease) was the cause of Kirkling's total disability.
 
 BACKGROUND
 
 2
 After working in coal mines for forty-two years, Kirkling filed an application for black lung benefits on October 1, 1990. Peabody contested liability, and the Director of the Department of Labor concluded that Kirkling did not qualify for benefits. Kirkling then requested a formal hearing on his claim, and the ALJ subsequently awarded benefits. Peabody appealed, and the BRB affirmed the ALJ's decision, concluding that the ALJ provided valid reasons which substantiated the existence of black lung disease, that Kirkling had a totally disabling respiratory impairment, and that black lung disease was the contributing cause of Kirkling's disability.
 
 
 3
 Kirkling testified that he quit his job with Peabody due to his shortness of breath and that he could no longer do his job. His last coal mine job, which lasted 7-8 years, was as a truck driver delivering supplies and equipment around the mine, which had exertional requirements of lifting 50 to 75 pounds. Kirkling also testified that he used to smoke two packs of cigarettes per day for 20 years, but cut down to one pack per day six months prior to his administrative hearing. He also testified that he had smoked cigarettes since he was 21 or 22 years old.
 
 MEDICAL EVIDENCE
 
 4
 The ALJ considered conflicting medical conclusions regarding Kirkling's medical diagnosis, his disability, and its cause. The record before the ALJ contained numerous x-ray readings, the majority of which were in the parties' Joint Stipulation of Medical Evidence, which the ALJ adopted as part its the Decision and Order. The ALJ also considered pulmonary function studies, blood gas studies, and various medical opinions.
 
 
 5
 Three medical narrative reports, which the ALJ relied upon, found that Kirkling did suffer from black lung disease, that Kirkling was disabled, and that the disease was caused by his coal mine employment. When making their medical assessments, these three physicians, Drs. Lenyo, Combs, and Rosecan, took into consideration Kirkling's symptomatology, medical history, smoking history, coal mine employment history, pulmonary function study, blood gas study, x-ray, and electrocardiogram (EKG).
 
 
 6
 In December 1990, Dr. Lenyo, Kirkling's treating physician, concluded that Kirkling had black lung disease due to the inhalation of coal dust particles. He determined that Kirkling was totally disabled from continuing in gainful employment involving even minor degrees of physical exertion over a sustained period of time. Dr. Lenyo concluded this condition was caused by Kirkling's coal mining experience.[1] Dr. Daniel J. Combs, a physician board-certified in internal medicine, examined Kirkling in November 1988 and July 1992, concluding that Kirkling had interstitial lung disease, chronic bronchitis from cigarette smoking, and significant systolic and diastolic hypertension.[2] In May 1992, Dr. Combs submitted an updated report concluding that Kirkling had black lung disease directly resulting from exposure to coal dust and mine pollutants, and that Kirkling would be unable to return to work.[3] In June 1993, Dr. Rosecan, who is board-certified in internal medicine, concluded that Kirkling had black lung disease as a result of his coal mine employment of over 40 years.[4]
 
 
 7
 Other medical reports considered by the ALJ included opinions that Kirkling did not suffer from black lung disease. Dr. David C. Cook, who is board-certified in internal medicine, pulmonary disease, and medical management, examined Kirkling in August 1991, concluding that Kirkling did not have black lung disease, but did have obstructive airways disease with at least a predominant bronchitic component.[5] Dr. David Howard, a specialist in pulmonary care, examined Kirkling in June 1992, finding no evidence of a restrictive lung disorder consistent with disabling black lung disease.[6] Dr. Lawrence Repsher, who is board-certified in internal medicine, pulmonary disease, and critical care medicine, conducted medical record reviews concluding that Kirkling did not have evidence of black lung disease or any intrinsic lung disease.[7]
 
 DISCUSSION
 
 8
 Although this case is a final decision of the BRB, we review the ALJ's decision to determine whether it is rational, supported by the evidence, and consistent with the governing law. Old Ben Coal Co. v. Director, OWCP, 62 F.3d 1003, 1006 (7th Cir.1995). This court does not reweigh the evidence or substitute its own judgment for that of the ALJ; however, we carefully review the record to determine whether the ALJ considered the relevant evidence. Id. at 1006. The ALJ "must consider all relevant medical evidence, refrain from substituting his layman's expertise for that of a qualified expert, and, absent evidence to the contrary or a legal basis, must not disregard the opinion of a qualified expert." Zeigler Coal Co. v. Kelley, OWCP, No. 96-2390, slip op. at 2-3 (7th Cir. April 28, 1997). After the examination of the record, we review the BRB's decision to determine whether it used the proper scope of review or committed any legal error. Old Ben, 62 F.3d at 1006.
 
 
 9
 Peabody's first argument is that the ALJ erred in relying on the "true doubt" rule when finding that Kirkling suffered from black lung disease. Under the true doubt rule, if the claimant and employer have submitted equally probative, but conflicting evidence, the claimant wins. Consolidated Coal Co. v. Office of Workers' Compensation Programs, 54 F.3d 434, 436 (7th Cir.1995).
 
 
 10
 Here, the ALJ examined the medical evidence and concluded that of the fifty-eight x-ray readings done by B-readers, who are experts in interpreting x-rays for the evidence of black lung disease, thirty-nine tested negative for black lung disease, sixteen were positive, two were unreadable, and one was possible. The ALJ then applied the true doubt rule in favor of Kirkling because of the difference of opinion amongst the B-readers, concluding that Kirkling had satisfied his burden of producing prima facie evidence of black lung disease. After the ALJ's decision, but before the BRB's review, the Supreme Court invalidated the true doubt rule, and thus, reliance on the rule is in error. See Director, OWCP v. Greenwich Collieries, 512 U.S. at 280.
 
 
 11
 However, the BRB concluded, and we agree, that the ALJ provided several valid reasons for finding that Kirkling suffered from black lung disease. First, the ALJ properly accorded greater weight to the more recent positive x-rays because he found pneumoconiosis to be a progressive disease. See Old Ben Coal Co. v. Battram, 7 F.3d 1273, 1276 (7th Cir.1993). Although there were more negative x-ray readings than positive, the ALJ was not required to base his finding of black lung disease solely upon the numerical superiority of the negative x-ray interpretations. See id. at 1277. The ALJ also appropriately accorded greater weight to the x-ray readings by B-readers and board-certified radiologists. See id. at 1278.
 
 
 12
 In addition, the ALJ weighed the doctors' medical reports, finding that the opinions of Drs. Lenyo and Combs were entitled to more weight because their opinions were well-reasoned and well-documented. Specifically, the ALJ noted that Dr. Lenyo had the opportunity to examine Kirkling's condition often and that Drs. Lenyo's and Combs' conclusions were supported by underlying evidence. The ALJ evaluated the various opinions, properly according greater weight to recent x-rays, the qualifications of the experts, and the persuasiveness of their reports. See Battram, 7 F.3d at 1278. As such, we conclude that the ALJ did consider the relevant medical evidence and that the ALJ's finding of black lung disease was rational, supported by the evidence, and consistent with governing law.
 
 
 13
 Second, Peabody's assertion that the ALJ erred in giving Dr. Lenyo's opinion greater weight due to his status as treating physician is also without merit, as the ALJ is not completely barred from giving greater weight to the treating physician's opinion. Although this court concluded in Amax Coal Co. v. Franklin, 957 F.2d 355, 359 (7th Cir.1992), that the treating physician's opinion is not necessarily entitled to greater weight than a nontreating specialist, we did not hold that the treating physician's opinion cannot be accorded greater weight if the ALJ substantiated and explained its reasoning. Here, the ALJ noted that Dr. Lenyo, as Kirkling's personal physician, had an opportunity to see Kirkling's condition more frequently. The ALJ also observed that Dr. Lenyo's conclusions were "supported by the underlying evidence." Therefore, the ALJ's accordance of greater weight to Lenyo's testimony was not improper.
 
 
 14
 Next, Peabody argues that the ALJ's explanation for finding total disability under 20 C.F.R. § 718.204 falls short of the requirement in §§ 7(c) and 8(c)(3)(A) of the Administrative Procedure Act (APA) that the decision-making of the ALJ be reasoned and explicit. Here, the ALJ considered the physicians' reports under 20 C.F.R. § 718.204(c)(4) in determining whether Kirkling was totally disabled. Section 718.204(c)(4) expressly applies where disability cannot be established by pulmonary function tests, arterial blood gas tests, or x-rays. Poole v. Freeman United Coal Mining Co., 897 F.2d 888, 893 (7th Cir.1990). In lieu of these objective tests, the ALJ can base his determination of disability on physicians' conclusions, if they are adequately supported by the underlying documentation. See id. (citing Adamson v. Director, 7 Black Lung Rep. 1-229, 1-232 (1984)). Thus, in order for total disability to be properly established, "an ALJ must consider all relevant evidence on the issue of disability including medical opinions which are phrased in terms of total disability or provide a medical assessment of physical abilities or exertional limitations which lead to that conclusion." Poole, 897 F.2d at 894.
 
 
 15
 In support of his conclusion that Kirkling was totally disabled, the ALJ accorded Drs. Lenyo's and Combs' opinions more weight, noting that they acknowledged Kirkling's smoking history and other risk factors in reaching their conclusions, yet concluded that Kirkling was totally disabled. The ALJ concluded that Drs. Lenyo and Combs based their decisions on factors such as a physical examination, work history, pulmonary function study, blood gas study, EKG, and smoking history. In addition, the ALJ found that Drs. Combs' and Lenyo's opinions were corroborated by Dr. Rosecan and evidence in the record. The ALJ also discredited Drs. Repsher and Cook because their reports did not demonstrate awareness of Kirkling's usual coal mine employment and exertional limitations, such as his job requirements involving heavy lifting.
 
 
 16
 We conclude that the ALJ properly weighed the relevant evidence in finding that Kirkling met his burden of proving totally disability. The ALJ stated that the evidence upon which he based his opinion reflected Kirkling's physical abilities and work limitations, in tandem with the overall medical analyses. As such, the ALJ's finding under 20 C.F.R. § 718.204(c)(4) did not violate the APA, as the ALJ adequately and explicitly explained his factual findings and conclusions.
 
 
 17
 Peabody's last argument is that even if Kirkling were totally disabled, his disability was not caused by black lung disease. To establish disability due to black lung disease, coal miners may rely on statutory and regulatory presumptions, weighing the system in their favor. Zeigler Coal Co. v. Kelley, OWCP, No. 96-2390, slip op. at 3 (7th Cir. April 28, 1997). When the claimant has presumptively established that there is a total disability, the employer can rebut the presumption by establishing that the respiratory or pulmonary impairment did not arise out of or in connection with the coal mine employment. Blakley v. Amax Coal Co., 54 F.3d 1313, 1320 (7th Cir.1995). Therefore, if Peabody can establish that Kirkling would have been disabled regardless of his exposure to coal dust, then the coal dust exposure did not contribute to his disability. Id.; see also Shelton v. Director, OWCP, 899 F.2d 690, 693 (7th Cir.1990) (miner not entitled to benefits if he became totally disabled by smoking).
 
 
 18
 In this case, the ALJ relied upon the opinions of Drs. Lenyo and Combs, who not only found that Kirkling suffered from black lung disease, but attributed Kirkling's totally disabling respiratory impairment to his coal mine employment. The ALJ reasoned that both doctors were well aware of Kirkling's smoking history and other possible risk factors when making their assessment. In addition, the ALJ recognized that Dr. Rosecan, who also concluded that Kirkling had black lung disease as a result of his coal mine employment, did not have an accurate assessment of Kirkling's smoking history when making his determination, nonetheless had well-founded reasons for his determination that Kirkling was disabled. The ALJ further noted that although Dr. Howard opined that Kirkling's black lung disease was not caused by coal dust exposure, the opinion offered no explanation of how he reached that conclusion. Dr. Cook, who did not find evidence of black lung disease, did not address the question of causation. Dr. Repsher noted that none of Kirkling's ailments were due to his coal mine employment. Relying on the rationale that Drs. Lenyo and Combs based their decisions on numerous and reliable indicators, such as a physical examination, work history, pulmonary function study, blood gas study, EKG, and smoking history, the ALJ properly accorded more weight to their opinions. Hence, the ALJ concluded that black lung disease was a contributing cause to Kirkling's totally disabling respiratory impairment.
 
 
 19
 Peabody argues that the ALJ conveniently overlooked Drs. Repsher's and Cook's opinions regarding causation. Specifically, Peabody contends that these doctors explicitly addressed the question of causation and "definitely" found that coal dust exposure did not contribute in any way to Kirkling's inability to work. However, in Dr. Cook's case, the record reflects otherwise. Dr. Cook states that "the data suggests that Mr. Kirkling does not have coworkers [sic] pneumoconiosis but does have obstructive lung disease."[8] Dr. Cook does not discuss causation, let alone rule out that coal dust exposure contributed to Kirkling's disability.
 
 
 20
 Dr. Repsher concluded that Kirkling suffered from a number of serious medical conditions, but none that are attributable to his work as a coal strip miner. However, the ALJ has the discretion to give little weight to a physician's opinion if the doctor has neither diagnosed black lung disease, nor the existence of totally disabling respiratory impairment, which is the case with Dr. Repsher. See Toler v. Eastern Assoc. Coal Co., 43 F.3d 109, 116 (4th Cir.1995); Bobick v. Saginaw Mining Co., 13 Black Lung Rep. 1-52, 1-54 (1988).
 
 
 21
 Peabody also argues that Drs. Lenyo and Combs did not "definitely" find that coal dust exposure was the necessary cause of Kirkling's disability. Dr. Lenyo concluded that not only was Kirkling suffering from black lung disease, but that "it is almost certain that [Kirkling's pneumonoconiosis] was aquired [sic] in the course of employment; the coal dust and associated particles produced his pulmonary incapacity and his general physical incapacity is due to his markedly impaired pulmonary function test."[9] In his updated report, Dr. Combs stated that "[b]ased on the history of coal mine work, and length of exposure to coal dust it is my opinion that Mr. Kirkling has pneumoconiosis that was a direct result to exposure to coal dust and mine pollutants and that he would not be able to return to work in the coal mine as it would aggravate his symptomatology."[10] Both of these opinions conclusively determine that Kirkling's black lung disease was the cause of his disability.
 
 
 22
 In sum, the ALJ considered all the relevant medical evidence, including countervailing evidence. The ALJ did not substitute his expertise for that of the physicians, but explained why certain medical opinions were entitled to greater weight. After reviewing the record, we conclude that the ALJ's findings of black lung disease, total disability, and causation are supported by the evidence and consistent with jurisprudence in the area of black lung disease.
 
 
 23
 Accordingly, we AFFIRM the judgment awarding black lung benefits to Kirkling.
 
 
 
 *
 The respondents filed a notice of intent not to file a brief in this case. After respondents failed to respond to this court's order directing them to show cause why this appeal should be decided without their filing, we determined that this appeal would be submitted on the petitioner's brief and the record and that oral argument would not be necessary. See Fed.R.App.P. 34(a); Cir.R. 34(f) and 31(d)
 
 
 [1]
 See Director's Exhibit No. 23, at 16-18
 
 
 [2]
 See Director's Exhibit No. 22, at 2 & 3; Claimant's Exhibit No. 18
 
 
 [3]
 See Claimant's Exhibit No. 14
 
 
 [4]
 See Claimant's Exhibit No. 26
 
 
 [5]
 See Director's Exhibit No. 26, at 3-6
 
 
 [6]
 See Employer's Exhibit No. 47, at 3; Deposition of Dr. David Howard, R. 76, at 3
 
 
 [7]
 See generally Employer's Exhibits No. 65 & 66
 
 
 [8]
 Director's Exhibit No. 26, at 6
 
 
 [9]
 Director's Exhibit No. 23, at 18
 
 
 [10]
 Claimant's Exhibit No. 14