ZEIGLER COAL COMPANY, Petitioner,

v.

Evelyn M. KELLEY and Office of Workers' Compensation Programs, United States Department of Labor, Respondents.

No. 96–2390.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 24, 1997.

Decided April 28, 1997.

Mark E. Solomons (argued), Laura M. Klaus, Thomas H. Odom, Arter & Hadden, Washington, DC, for Petitioner.

Thomas O. Shepherd, Jr., Benefits Review Board, Donald S. Shire, Rita Roppolo, Christian P. Barber, Department of Labor, Office of the Solicitor, Washington, DC, for Respondent Office of Workers' Compensation Programs.

Harold B. Culley, Jr. (argued), Culley & Wissore, Raleigh, IL, for Respondent Evelyn M. Kelley.

Before POSNER, Chief Judge, and FLAUM and EVANS, Circuit Judges.

FLAUM, Circuit Judge.

Twenty-two years ago, John P. Kelley, a miner, now deceased, filed a claim for black lung benefits pursuant to the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.* Like a pinball, Kelley's claim has been bounced around the benefits review system. Underlying this ordeal is the suspicion that Kelley's disability is a result of his heart disease rather than pneumoconiosis caused by exposure to the dust of the coal mines. Zeigler Coal, Kelley's employer, asks this court now to reexamine the final grant of benefits. We do so and affirm the grant of benefits to Kelley's estate.

## I.

Briefly, the procedural history of this claim is as follows. John Kelley retired from a 32–year mining career in 1974, at which time he underwent bypass surgery. He applied for black lung benefits in 1975, which were denied. In 1979, the Department of Labor reexamined Kelley's claim under the 1977 amendments to the Black Lung Benefits Act and approved his claim. A hearing was held before an Administrative Law Judge (ALJ) in 1985; benefits were awarded in 1986. Zeigler, responsible for reimbursing the government, appealed to the Benefits Review Board, which, finding fault with the ALJ's weighing of the evidence and application of the regulations, remanded the case in 1992. On remand, the ALJ again awarded Kelley benefits. Zeigler appealed again. The Board affirmed benefits in 1994. Zeigler sought reconsideration, which was denied in 1996. Zeigler now petitions this court for review.

Though Zeigler's appeal is from a decision of the Benefits Review Board, "we actually review the decision of the ALJ, asking whether it is supported by substantial evidence, in accord with the law, and is rational." *Zeigler Coal Co. v. Office of Workers' Compensation Programs,* 23 F.3d 1235, 1237 (7th Cir.1994) (quoting *Peabody Coal v. Helms,* 859 F.2d 486, 489 (7th Cir.1988)). We affirm the findings of the ALJ if they are supported by "such relevant evidence as a rational mind might accept to support an adequate decision." *Peabody Coal Co. v. Vigna,* 22 F.3d 1388, 1392 (7th Cir.1994) (quoting *Amax Coal Co. v. Beasley,* 957 F.2d 324, 327 (7th Cir.1992)). To this end, the ALJ must consider all relevant medical evidence, refrain from substituting his layman's expertise for that of a qualified expert, and, absent evidence to the contrary or a legal basis, must not disregard the opinion of a qualified expert. See *Vigna,* 22 F.3d at 1392; *Wetherill v. Director, Office of Workers' Compensation Programs,* 812 F.2d 376, 382 (7th Cir.1987). Within these parameters, factual determinations are the ALJ's to make: "We cannot reweigh the evidence or make credibility determinations." *Vigna,* 22 F.3d at 1392; *Summers v. Freeman United Coal Mining Co.,* 14 F.3d 1220, 1223 (7th Cir.1994). We reserve only questions of law for de novo review. See *Vigna,* 22 F.3d at 1392; *Keeling v. Peabody Coal Co.,* 984 F.2d 857, 862 (7th Cir.1993).

Given this bifurcated standard of review, Zeigler, perhaps strategically, argues that its "appeal presents only questions of law," and thus would have us review the claim *de novo.* We cannot agree. Zeigler's appeal asks us in large part to reweigh the evidence under the "interim presumptions" with a sprinkling of inconsequential issues for plenary review. We address these specifics in due course. First, we should place Kelley's award of benefits within the context of "the interim presumptions," the prescribed

lens through which we view Kelley's disability.

The purpose of the Black Lung Benefits Act is to provide benefits both to coal miners who are totally disabled by pneumoconiosis and to surviving dependents of miners who died as a result of pneumoconiosis. *See* 30 U.S.C. § 901. To establish disability due to pneumoconiosis, miners may rely on statutory or regulatory presumptions, which tend to weight the system in their favor. *See Freeman United Coal Mining Co. v. Foster,* 30 F.3d 834, 836 (7th Cir.1994). Because Kelley filed his claim in 1975, the "interim presumptions," 20 C.F.R. § 727.203, control. Under section 727.203, "a coal miner who engaged in coal mine employment for at least 10 years will be presumed totally disabled due to pneumoconiosis" if he meets one of four thresholds for medical evidence. 20 C.F.R. § 727.203(a). In Kelley's case, the ALJ found that he met the presumption requirements through x-ray evidence, *see* § 727.203(a)(1), and through ventilatory studies, *see* § 727.203(a)(2). Section 727.203(b) provides that this presumption may be rebutted in four manners. Here, Zeigler sought to establish pursuant to 20 C.F.R. § 727.203(b)(3) that, upon consideration of all relevant medical evidence, "the total disability or death of the miner did not arise in whole or in part out of coal mine employment." The ALJ found that Zeigler failed to meet both its burden of production and persuasion. As evidenced by this synopsis, under the regulations, pneumoconiosis becomes the focus of the ALJ's inquiry and our review; Kelley's potentially disabling heart disease and smoking habit are relegated to the margins, unless it can be proved that these were the total cause of disability.

## II.

■ We proceed now to Zeigler's appeal. Zeigler claims that the ALJ erred in invoking the interim presumption on the basis of Kelley's x-ray evidence pursuant to 20 C.F.R. 727.203(a)(1). Subsection (a)(1) allows that chest x-ray evidence may establish the presence of pneumoconiosis. The Supreme Court has interpreted "establish" to mean "show by a preponderance of the evidence"; the evidence to be considered under subsection (a)(1) is x-rays within the context of their medical interpretations and in reference to other x-rays of the claimant, rather than the x-rays in isolation. *See Mullins Coal Co. v. Director, Office of Workers' Compensation Programs,* 484 U.S. 135, 148, 108 S.Ct. 427, 434, 98 L.Ed.2d 450 (1987) (examining claim where miner relied on single x-ray to invoke presumption).

In the instant case, the ALJ had before him x-rays of Kelley's chest taken between 1962 and 1985. B-readers, a specially skilled subset of x-ray readers, first read x-rays positive for pneumoconiosis in 1979; however, inconsistency in readings persisted through 1985. In making his determination, the ALJ relied on the five most recent x-ray readings, dating from 1985. Of those five readings, four were "positive for pneumoconiosis": Dr. Minetree, a Board certified radiologist, classified the evidence as 3/2; Dr. Brandon, a Board certified radiologist and B-reader, classified the evidence as 1/2; Dr. Lapp, a B-reader, weighted it as 2/1; and Dr. Renn, a B-reader classified it as 2/3. *See* 20 C.F.R. § 410.428(a)(1) (explaining classification of chest roentgenograms). Dr. Mann, a B-reader, found the x-ray evidence "negative." Of these four "positive" interpretations, one, made by Dr. Renn, concluded that the x-ray evidence did not establish pneumoconiosis. The ALJ relied upon the remaining three "positive" x-rays to find that the x-ray evidence established pneumoconiosis. The ALJ explained that he discounted the reading made by Dr. Renn because his statements were "equivocal to the existence of pneumoconiosis."[1] The ALJ further explained that, pursuant to Benefits Review Board precedent, he credited the x-ray reading made by Dr. Brandon, a board certified radiologist and B-reader, over the reading

---

1. Renn writes that Kelley's prior chest x-rays were interpreted "by most B-readers as showing a mid category profusion of both small rounded and irregular opacities consistent with pneumoconiosis.... In sum, there is radiographic evidence for opacities consistent with pneumoconiosis." Dr. Renn goes on to discuss Kelley's heart disease and smoking history. He attributes the opacities to Kelley's smoking, and concludes: "there is no pneumoconiosis."

made by Dr. Renn, who although a B-reader, is not certified in radiology. The ALJ also found Dr. Renn's reading "contrary to the purposes of the Black Lung Benefits Act." Presumably, the ALJ believed that Renn was "hostile to the Act," a doctrine particular to black lung benefits law, for the doctor opined that " 'simple coal workers' pneumoconiosis does not progress once exposure has ceased." [2]

Zeigler complains that the ALJ erred in evaluating the x-rays for four reasons. First, the ALJ did not explain why he placed the most weight on the most recent x-ray interpretations. True, the ALJ did not say in so many words why he relied upon the more recent opinions. He cites, however, Board precedent for the proposition that considering the latest evidence of record is an accepted custom. Second, Zeigler claims that the ALJ mischaracterized the medical evidence by stating that only one doctor found the x-ray negative for pneumoconiosis, when in fact two had. This argument is based on a distortion of the record: the ALJ writes that Dr. Renn interpreted the x-ray as "positive," meaning that opacities existed in the lung in sufficient number to be classified under 20 C.F.R. § 410.428, but found that the evidence did not establish pneumoconiosis. Thus the ALJ accounts for Dr. Mann's negative reading (*i.e.* a reading of no or insufficient opacities) distinct from Dr. Renn's negative outcome. Third, by crediting the x-ray reading of the doctors in the majority, Zeigler argues, the ALJ impermissibly relied upon "a nose count of witnesses." *See Sahara Coal Co. v. Fitts,* 39 F.3d 781, 782 (7th Cir.1994). We disagree: as reflected in the summary above, the ALJ did not mechanically count votes, but considered the conclusions of all five reports and the qualifications of all five readers, as well as scrutinizing the substance of Dr. Renn's report.

■ Finally, Zeigler points out that the ALJ incorrectly found that Dr. Renn was "hostile to the act" or, in other words, disbelieving that pneumoconiosis can disable. *See*

*Pancake v. AMAX Coal Company,* 858 F.2d 1250, 1255–56 (7th Cir.1988). We agree that the ALJ's labeling Dr. Renn hostile was a mistake because Dr. Renn only opined that he thought simple pneumoconiosis could not progress once exposure ceased, not that he thought it could not disable. We hold this error harmless, however, because the ALJ provided two independent rationales for rejecting Renn's analysis. *See Sahara Coal Co. v. Office of Workers' Compensation Programs, United States Depart. of Labor,* 946 F.2d 554, 558 (7th Cir.1991) ("If the outcome of a remand is foreordained, we need not order one."); *Newell v. Director,* 933 F.2d 510, 512 (7th Cir.1991) ("We have not been reluctant to rely on harmless error when a remand would be futile (and costly).").

The ALJ, not content to ground his award of benefits solely on the x-ray evidence, went on to invoke the interim presumption by establishing the presence of chronic respiratory or pulmonary disease through ventilatory studies. *See* 20 C.F.R. § 727.203(a)(2). Zeigler protests that the ALJ relied on his own lay evaluation of the ventilation studies, rather than medical opinion in invoking the interim presumption under subsection (a)(2). We decline to reach the merits of this dispute, as our affirmance under subsection (a)(1) obviates the need.

### III.

■ Unsuccessful at the invocation stage, Zeigler argues that the ALJ erred in finding that the presumption was not rebutted pursuant to 20 C.F.R. § 727.203(b)(3). Essentially, under subsection (b)(3), we ask whether Kelley would have been disabled notwithstanding his pneumoconiosis. If he would have been, the presumption of total disability is successfully rebutted. We have articulated this basic inquiry in various manners. In *Vigna,* we explained that to demonstrate that a miner's "total disability was not wholly or in part caused by exposure to coal dust, petitioners must show by a preponderance of the evidence that black lung disease was not a contributing cause of [the

---

**2.** The Benefits Review Board notes for us that the ALJ "misapplied the hostility rule, because Dr. Renn's statement is not equivalent to a deter-

mination that simple pneumoconiosis cannot ever be totally disabling."

miner's] disability." *Vigna*, 22 F.3d at 1393; *see also Amax Coal*, 993 F.2d at 602. We defined contributing cause as a cause "necessary, but not sufficient, to bring about the miner's disability." *Vigna* at 1393; *see also Shelton v. Director, Office of Workers' Comp. Programs*, 899 F.2d 690, 693 (7th Cir.1990). In *Patrich v. Old Ben Coal Company*, we articulated the flip-side of this test: "the evidence adduced by Respondent must demonstrate that the claimant's total disability was caused entirely by an impairment other than pneumoconiosis." 926 F.2d 1482, 1491 (7th Cir.1991).

■ Zeigler first argues that the ALJ misstated the standard for rebuttal of the interim presumption under 20 C.F.R. § 727.203(b)(3). The ALJ cited the *Patrich* standard. Zeigler cites the *Vigna* standard. If one pauses to reason through the words, these tests are one and the same.

Zeigler also argues that the ALJ reviewed the medical evidence incorrectly. It was at this stage that Zeigler sought to persuade with evidence of Kelley's vascular disease. On appeal, Zeigler argues that the ALJ erred in weighing the opinions of Dr. Mohan and Dr. Renn. The ALJ, reconsidering and reweighing the evidence of record in light of the rebuttal standard, discounted the opinion of Dr. Mohan as it lacked a "requisite degree of certainty." At his deposition Dr. Mohan testified that Kelly was not disabled by any pulmonary impairment. In a report made nine years earlier, however, Mohan described Kelly's chronic bronchitis and his long history of a cough with black expectoration. He attributed Kelly's pulmonary problems to his exposure to coal dust and to his cigarette smoking habit. Mohan wrote that Kelly's "limitation of activity is more related to his vascular disease than his lung disease." As our rebuttal standard is that a claimant's disability must be caused by factors totally distinct from pneumoconiosis, the ALJ permissibly discounted Mohan's deposition as his earlier language indicated that Kelly's exposure to coal dust was a contributing cause, albeit a minor one, to his disability.

■ Again, this time under the rebuttal standard, the ALJ did not heed the opinion of Dr. Renn. The ALJ, still troubled by Dr. Renn's acknowledgment of radiographic evidence consistent with pneumoconiosis and recognition or Kelly's chronic bronchitis-emphysema coupled with his discordant conclusion that both the irregular and regular opacities were caused by smoking, found that Dr. Renn did not adequately account for the profusion of regular opacities usually associated with coal worker's simple pneumoconiosis. As explained above, *see Vigna*, 22 F.3d at 1392; *Summers*, 14 F.3d at 1223, we are not in the business of reweighing medical evidence, which is precisely what Zeigler asks us to do with Dr. Renn's opinion. We defer to the judgment of the ALJ in these matters. He has reviewed Dr. Renn's opinion and explained the weight accorded it rationally. Due to our remove from fact finding (and cognizant of our lack of expertise in these medical matters), we require little more.

## IV.

■ Finally, Zeigler protests the onset date selected by the ALJ. Because the x-ray evidence was "voluminous and conflicting" and no medical opinion of record reflects an onset date of disability, the ALJ dated benefits from first day in the month in which Kelley filed his claim for benefits. Thus the ALJ awarded benefits commencing in 1974. Zeigler argues that no sign of pneumoconiosis was evident until 1979 and that the ALJ relied primarily on x-rays taken in 1985 to show the impact of the disease.

Here the regulations seem to trump common sense. Code of Federal Regulations, Title 20, section 725.503(b) reads: "In a case of a miner who is totally disabled due to pneumoconiosis, benefits are payable to such miner beginning with the month of onset of total disability. Where the evidence does not establish a month of onset, benefits shall be payable to such miner beginning with the month during which the claim was first filed, or the month during which the claimant elected review under part 727 of this chapter." With no clearly established onset date, the benefit of the doubt and the concomitant back-dated benefits go to the miner.

For the reasons articulated above, we deny Zeigler's petition for review and affirm the judgment of the Benefits Review Board.