In the

# United States Court of Appeals
## For the Seventh Circuit

No. 07-1884

CONSOLIDATION COAL COMPANY,

*Petitioner*,

*v.*

DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES DEPARTMENT OF
LABOR, and DONALD E. BEELER,

*Respondents.*

Petition for Review of an Order
of the Benefits Review Board.
No. 06-BLA-0457

ARGUED JANUARY 15, 2008—DECIDED APRIL 3, 2008

Before EASTERBROOK, *Chief Judge*, and FLAUM and EVANS,
*Circuit Judges*.

FLAUM, *Circuit Judge*. Donald Beeler is a 76-year-old ex-
smoker who spent a substantial portion of his career
working in mines. After being diagnosed with lung
disease, he applied for benefits under the Black Lung
Benefits Act. An Administrative Law Judge ("ALJ")
reversed an earlier decision by the Department of Labor
and awarded Beeler benefits under the Act. The ALJ
weighed conflicting medical evidence and concluded that

Beeler's lung disease arose, in part, from his coal mine employment. Because the ALJ's decision was supported by substantial evidence, we affirm.

## I. Background

Beeler was an underground coal miner for at least 13 years, between 1961 and 1983. During that period of time, he spent ten years with Consolidation Coal Company ("Consolidation") and was last classified as a section foreman. When he was with Consolidation, he worked five to seven days per week averaging 12-hour workdays. His primary task was to make daily safety inspections of the mine faces. He also worked with the crew, lifting and carrying heavy supplies, helping with roof bolting, operating the shuttle car, and assisting with repairs. On average, he walked five to six miles per day. He was exposed to coal dust on a daily basis. What complicates this case is that Beeler was also a smoker. He started smoking cigarettes at age 18 or 19, averaging one to one-half pack per day at varying times. He quit at age 54, after about 35 years of smoking.

Beeler's only medical condition is severe lung disease, and he has testified that his breathing problems started while he was working for Consolidation. His symptoms included shortness of breath, the inability to lift heavy objects, and the inability to walk any significant distance. He was referred to a pulmonary specialist, Dr. Prabhu, in 1997. Dr. Prabhu gave Beeler inhalers (which he was already taking), and enrolled him in a pulmonary rehabilitation program which he was unable to complete. Beeler then began seeing Dr. Henkle, another pulmonary physician, in 2002. He ordered supplemental oxygen and

prescribed nebulizer therapy. By 2005, Beeler was totally dependant on the supplemental oxygen and was taking three nebulizer treatments a day.

Beeler filed a claim for black lung benefits in August of 2001. He went through a Department of Labor examination with Dr. Drake, who found it reasonable that his ailment—chronic obstructive pulmonary disease ("COPD")—was related to both his smoking history and coal mining employment and that it disabled him.[1] Nevertheless, the Department of Labor denied the claim on August 12, 2002, finding that Beeler's lung disease did not qualify him for benefits. Beeler sought review before an ALJ. Before this hearing, the parties developed additional evidence, including expert witness reports. The ALJ ultimately awarded benefits to Beeler. He found the presence of legal pneumoconiosis (i.e., COPD arising out of coal mining employment) and total disability due to the pneumoconiosis based on the medical opinion submitted by Beeler's expert. The Benefits Review Board affirmed the award of benefits on February 28, 2007.

## II. Discussion

Consolidation raises a single issue on appeal: whether the ALJ's determination that Beeler has pneumoconiosis is supported by substantial evidence in the record. On

---

[1] Lung disease can be obstructive or restrictive. Obstructive lung disease is characterized by an inability to fully exhale. This leaves lungs hyperextended, and interferes with oxygen exchange. Restrictive lung disease is characterized by scarring of the alveolar wall, which hinders oxygen from moving into the bloodstream.

petition for review from a decision of the Benefits Review Board, we examine the ALJ's decision to determine if it is rational, supported by substantial evidence, and in accordance with the law. *Peabody Coal Co. v. Shonk*, 906 F.2d 264, 267 (7th Cir. 1990). We accept findings of fact and corresponding conclusions when they are supported by substantial evidence in the record considered as a whole. *Meyer v. Zeigler Coal Co.*, 894 F.2d 902 (7th Cir. 1990).

In order to establish entitlement benefits, a miner must show that he or she is totally disabled by pneumoconiosis arising out of coal mine employment. *Midland Coal Co. v. Director, OWCP [Shores]*, 358 F.3d 486, 491 (7th Cir. 2004). Pneumoconiosis in this context can take two forms: clinical and legal. Clinical pneumoconiosis is a "condition characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure." 20 C.F.R. § 718.201(a)(1). Legal pneumoconiosis, which is what is at issue in this case, is a broader concept. It is defined as any chronic lung disease arising out of coal mining employment including COPD, emphysema, and chronic bronchitis, which are characterized by airway dysfunction and are evidenced by a decrement in the miner's ability to exhale in a given amount of time. 30 U.S.C. § 902(b). Thus, Beeler had to prove in his proceedings below that his COPD was caused, at least in part, by his work in the mines, and not simply his smoking habit.

There were several medical opinions given in this case. Dr. Drake examined Beeler in 2002 as a part of the Department of Labor pulmonary evaluation. He diagnosed COPD—namely emphysema and chronic bronchitis—and

total disability. He concluded that the condition was primarily due to smoking and found it reasonable that occupation exposure was contributory given that smoking could not account for the severity of the disability. In addition, Dr. Prabhu and Dr. Cady wrote letters in support of Beeler's black lung claim in 2002. Dr. Prabhu diagnosed COPD and both doctors determined that smoking history and coal dust contributed to the disease. Dr. Henkle also examined Beeler in 2002. His diagnosis was similar, and he concluded that coal dust exposure could have contributed to the development of the emphysema, as the smoking history was not particularly strong. Then, Dr. Tuteur examined Beeler at Consolidation's request in 2003; he diagnosed severe COPD solely due to smoking. He concluded that coal dust exposure did not cause or contribute to Beeler's lung disease, noting that miners with no smoking history rarely have COPD, while smokers have a one in five chance of developing a severe obstruction. Dr. Renn reviewed the medical records and issued a report in 2004 where he diagnosed COPD due solely to smoking. Finally, Dr. Cohen reviewed the medical records and issued a report of his findings in 2005. He attributed the lung disease to both occupational exposure and smoking.

The primary dispute in this case is whether the ALJ considered and weighed all of the medical opinions that address the etiology of Beeler's chronic obstructive lung disease. In order to qualify for benefits, Beeler had to demonstrate that his lung disease was caused, at least in part, by coal dust he inhaled while working as a miner. Dr. Drake and Dr. Cohen concluded that the lung disease was due to coal mine employment as well as smoking. Dr. Tuteur and Dr. Renn decided that coal mine employment was not a cause. The ALJ gave decisive weight to

Dr. Cohen's opinion and found the others, on a relative basis, poorly reasoned. At the end of the day, "weighing conflicting medical evidence is precisely the function of the ALJ as fact-finder." *Poole v. Freeman United Min. Co.*, 897 F.2d 888, 895 (7th Cir. 1990). The ALJ found Dr. Cohen's opinion most persuasive because he carefully discussed the substantial body of scientific evidence documenting the causal relationship between COPD and occupational exposure demonstrating that a one pack year smoking history is about equivalent to one year of coal dust exposure. Dr. Cohen integrated this medical evidence along with Beeler's medical record to conclude that coal dust exposure did contribute to his obstruction.

Consolidation maintains that the ALJ was too dismissive of Dr. Tuteur and Dr. Renn's medical opinions. But the ALJ gave less weight to their opinions for sensible reasons. We begin with Dr. Tuteur. First, the essence of his opinion was a three sentence comment that presented a personal view that Beeler's condition had to be caused by smoking because miners rarely have clinically significant obstruction from coal dust. This would lead to the logical conclusion that Dr. Tuteur categorically excludes obstruction from coal-dust-induced lung disease and would not attribute any miner's obstruction, no matter how severe, to coal dust. However, the Department of Labor reviewed the medical literature on this issue and found that there is consensus among scientists and researchers that coal dust-induced COPD is clinically significant. This medical authority indicates that nonsmoking miners develop moderate and severe obstruction at the same rate as smoking miners. 65 Fed. Reg. 79,938. Second, Dr. Tuteur did not rely on information particular to Beeler to conclude that smoking was the only cause of his obstruction. Third, he did not cite a

single article in the medical literature to support his propositions. Consolidation's only counterargument here is that it is possible to interpret Dr. Tuteur's opinion as being consistent with the proposition that coal dust exposure *can* cause COPD in rare cases. But the Department of Labor report does not indicate that this causality is merely rare. And even if the causation is rare, Dr. Tuteur does not explain why Beeler could not be one of these "rare" cases. This flaw is endemic to the entire opinion, because Dr. Tuteur did not appear to analyze any data or observations specific to Beeler.

The ALJ gave less weight to Dr. Renn's report for similarly rational reasons. The entirety of the opinion consists of a list of diagnoses followed by a statement that Beeler's condition was the result of his smoking, not coal dust exposure. There is no explanation or reasoning demonstrated here that links the two elements—the opinion is purely conclusory.

Conversely, the ALJ had sensible reasons for giving more weight to Dr. Cohen's report. First, it was based on objective data and a substantial body of peer-reviewed medical literature that confirms the causal link between coal dust and COPD. Second, he reviewed studies that were even more recent than the aforementioned Department of Labor study. Third, he linked these studies with Beeler's symptoms, physical examination findings, pulmonary function studies, and arterial blood gas studies. Finally, he explained that Beeler's pulmonary function studies showed "minimal reversibility after administration of bronchodilator" and that he had an "abnormal diffusion capacity," all of which is consistent with a respiratory condition related to coal dust exposure.

Consolidation raises two ancillary points as well. First, it claims that the ALJ did not discuss the relevant CT

scan and medical records. This is not accurate. The ALJ discussed all of the CT scan reviews (noting that they did not find evidence of clinical pneumoconiosis) and concluded, as he must, that they did not address causation. With respect to medical records, the ALJ summarized the evidence and indicated that the records were considered where relevant. Second, Consolidation contends that the ALJ improperly shifted the burden of proof to the employer to disprove that the claimant's COPD was not due to coal mine dust employment. However, it is clear from the ALJ's opinion that he appropriately evaluated the conflicting medical opinion evidence congnizant of the fact that the claimant bore the burden of establishing the existence of legal pneumoconiosis. The ALJ properly found that Beeler satisfied his burden of proof based on the reasoned and documented opinion of Dr. Cohen, which outweighed the contrary reports of the employer's experts.

In the end, Consolidation's argument amounts to little more than an attempt to ask this Court to reweigh the evidence in the record. That is not our task. We do not place the evidence back on the scale after the ALJ has already done so. We simply examine whether the scale was correctly calibrated. In this case, it was.

### III.  Conclusion

For the foregoing reasons, we DENY the petition for review and AFFIRM the judgment of the Benefits Review Board.