**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 19, 2008
Decided February 9, 2009

**Before**

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

No. 08-1574

RICHARD SPRAGUE,
          *Petitioner*,

    *v.*

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF
LABOR, and FREEMAN UNITED
COAL MINING COMPANY,
          *Respondents*.

Petition for Review of an Order of the
Benefits Review Board, United States
Department of Labor.

No. 03-BLA-5980

**ORDER**

On this very day, 19 years ago, Richard Sprague, a former coal miner, filed a pro se claim for black lung disability benefits. His claim was denied four months later. He filed for benefits again in 2002 and his case is here now after it has gone back and forth before an administrative law judge (ALJ) and the Department of Labor's Benefits Review Board. And with our decision today, the case still cannot be put to rest.

Sprague, who is now 81 years old, worked 24 years at a coal mine. He has also smoked between a pack and a half a pack of cigarettes a day since he turned 18 in 1945. He appeals the denial of benefits under the Black Lung Act, 30 U.S.C. § 921. Sprague no doubt suffers from an obstructive lung disease that has totally disabled him, but Freeman United Coal Mining Company, the coal mine operator responsible for any benefit payments that may be awarded, contests whether Sprague's disability stems from his employment as a coal miner.

The parties agree that Sprague is totally disabled from a lung impairment and suffers from chronic obstructive pulmonary disease (COPD), but to obtain benefits Sprague must also prove that he is totally disabled by pneumoconiosis arising out of coal mine employment. *See* 20 C.F.R. § 718.1(a); *Consolidation Coal Co. v. Dir., Office of Workers' Comp. Programs*, 521 F.3d 723, 725 (7th Cir. 2008). Sprague can prove that he has the clinical form of pneumoconiosis, a disease in which inhaled coal dust damaged the lung tissue, *see* 20 C.F.R. § 718.201(a)(1), or he can establish legal pneumoconiosis, which is any other lung disease related to or aggravated by coal dust, *see* 20 C.F.R. § 718.201(a)(2), (b). *See also Consolida- tion Coal*, 521 F.3d at 725 n.1.

Freeman requested and received a hearing before an ALJ, contesting the Department of Labor district director's initial determination that Sprague was entitled to benefits. *See* 20 C.F.R. § 725.418. The ALJ considered a plethora of medical documents: ten readings of three X-rays done by six different doctors; five readings by five doctors of a single CT scan; and doctors' reports from both parties interpreting the X-rays, CT scan, medical history, occupational history, physical exam, and other medical tests. The ALJ found that none of this evidence established either clinical or legal pneumoconiosis and denied benefits. In reaching this decision, the ALJ discredited a report by Sprague's primary expert, Dr. Robert Cohen, a board-certified pulmonary specialist and director of a black lung clinic, who diagnosed Sprague with both clinical and legal pneumoconiosis. The ALJ thought that Dr. Cohen's report was "slanted" in Sprague's favor, stating, for example, that Dr. Cohen overstated Sprague's exposure to coal mine dust but minimized his smoking history and that Dr. Cohen relied selectively on certain medical reports. The ALJ, noting that Sprague was exposed more to cigarette smoke than to coal dust and his condition worsened after he stopped mining but continued smoking, concluded that it seemed "much more likely that [Sprague's] obstructive impairment is due to smoking rather than coal mining."

Sprague appealed to the Benefits Review Board (BRB), which identified two evidentiary errors: first, the ALJ admitted too many readings of the CT scan, and second, the ALJ wrongly excluded a positive re-reading of an X-ray that Sprague had submitted to rebut Freeman's case. The BRB vacated the ALJ's decision in part and instructed him on

remand to reevaluate the X-ray and CT-scan evidence, to reconsider his determination that Dr. Cohen understated Sprague's smoking history, and to refrain from substituting his own opinion for that of the medical experts.

On remand the ALJ again denied benefits. He admitted the positive re-reading of the   X-ray, but found that it did not affect his finding that the X-ray evidence failed to prove the existence of pneumoconiosis. He continued to discount Dr. Cohen's report because it was based in part on positive readings of the X-ray and CT-scan evidence that the ALJ had determined were negative. The ALJ also continued to maintain that Dr. Cohen's opinion was flawed because it understated Sprague's smoking history. Finally, the ALJ denied that he was substituting his own opinion for that of the medical experts and claimed instead that he was merely "exercising common sense"; he reasserted that Sprague's impairment was more likely due to smoking than coal mining.

Sprague appealed again to the BRB, but this time the panel split and the majority found the ALJ's decision supported by substantial evidence. The dissenting judge, however, thought that the ALJ exhibited "obvious bias" against Sprague; failed to reweigh the X-ray evidence; mischaracterized Dr. Cohen's medical opinion as to Sprague's work history, type of coal mine employment, and smoking history; continued to substitute his own opinion for that of medical experts; and applied an incorrect legal standard by assuming that Sprague's impairment stemmed from only a single cause, rather than determining whether it was "significantly related to, or substantially aggravated by, dust exposure in coal mine employment" as directed by 20 C.F.R. § 718.201(a)(2).

On appeal to this court, Sprague contends that the ALJ harbored a personal belief that Sprague did not suffer from pneumoconiosis and thus did not objectively weigh the evidence. With regard to the X-ray evidence, for example, Sprague argues that the ALJ considered the qualifications of only some of the doctors and did not give valid reasons for crediting the doctors that he did, possibly overlooking a positive X-ray. Turning to the CT-scan evidence, Sprague argues that the ALJ did not follow the BRB's instructions on remand to exclude three of Freeman's four CT-scan readings and that he had no basis in the record to conclude that Freeman's doctors are more qualified to read CT scans than Dr. Cohen. Finally, Sprague lists a litany of reasons why he believes that the ALJ erred when rejecting Dr. Cohen's medical reports that diagnosed clinical and legal pneumoconiosis. To begin, he argues that the ALJ erred in rejecting Dr. Cohen's diagnosis of clinical pneumoconiosis based on an invalid analysis of the X-ray evidence. Sprague also contends that the ALJ gave Dr. Cohen's opinion less weight because Dr. Cohen was Sprague's chosen expert and that the ALJ improperly substituted his own opinion for that of the medical experts. In addition, Sprague argues that the ALJ made a legal error by not addressing whether Sprague's lung

disease was cause in part by occupational exposure.  Sprague asks that this case be remanded to a different ALJ.

We review the ALJ's decision to determine whether it is rational, supported by substantial evidence, and consistent with controlling law.  *Stalcup v. Peabody Coal Co.*, 477 F.3d 482, 484 (7th Cir. 2007).  We will not address each of Sprague's claims of error because we conclude that the ALJ's treatment of the X-ray evidence, his substitution of his opinion for that of the medical evidence, and his failure to address whether coal mining contributed to Sprague's lung impairment are sufficient to vacate and remand the entire case.

Because clinical pneumoconiosis is caused by deposits of coal dust in the lungs, the presence of the disease can sometimes be seen in an X-ray as opacities in the lungs. Evaluating the significance of X-ray readings submitted by the parties is a task that falls to an ALJ.  *See Mullins Coal Co., Inc. v. Dir., Office of Workers' Comp. Progs.*, 484 U.S. 135, 148-49 (1987) ("[T]he ALJ must weigh conflicting interpretations of the same X-ray in order to determine whether it tends to prove or disprove the existence of pneumoconiosis.").  If an X-ray generates conflicting readings, an ALJ may give greater weight to an interpretation by a doctor with superior credentials.  *See* 20 C.F.R. § 718.202(a)(1); *Zeigler Coal Co. v. Dir., Office of Workers' Comp. Programs*, 326 F.3d 894, 899 (7th Cir. 2003); *Old Ben Coal Co. v. Battram*, 7 F.3d 1273, 1276 (7th Cir. 1993).  Thus, if one doctor is a B-reader[1] and another is dual-qualified as a B-reader and a board-certified radiologist, the ALJ may accept the conclusion of the dual-qualified doctor.  If the doctors, however, are equally qualified, then an ALJ may look beyond the readings to other relevant evidence, such as the ages of different X-rays or the persuasiveness of the doctors' reports.  *See Old Ben Coal*, 7 F.3d at 1277-78.

The ALJ may not, however, count the number of opinions in support of and against a pneumoconiosis diagnosis and just choose the party having more medical opinions in its favor.  *See Stalcup*, 477 F.3d at 484.  Similarly, the ALJ may not automatically side with the party retaining better-qualified doctors to read the X-rays but must come to a conclusion about the probativeness of each underlying X-ray.  *See Cook v. Dir., Office of Workers' Comp. Programs*, 816 F.2d 1182, 1185 (7th Cir. 1987) ("Under the regulation it is not the reading, but the x-ray, that establishes the presumption [of pneumoconiosis]."); 20 C.F.R. § 718.202(a)(1) ("A chest  X-ray . . . may form the basis for a finding of the existence of pneumoconiosis."). Only after examining the probative value of each individual X-ray can the ALJ come to a

---

[1] B-readers are doctors who have demonstrated proficiency in recognizing which lung opacities indicate pneumoconiosis, as opposed to another lung disease.  *See* 20 C.F.R. § 718.202(a)(1)(ii)(E).

reasoned conclusion about whether the X-ray evidence as a whole proves the existence of pneumoconiosis.

Here the ALJ failed to resolve the conflicting interpretations of each X-ray and concluded that the X-ray evidence did not establish the presence of pneumoconiosis without first considering the qualifications of each doctor who read the X-rays. Based on a comparison of the qualifications of the doctors who read the 1999 X-ray, the ALJ concluded that the X-ray did not tend to establish the presence of pneumoconiosis; however, he carried out no such comparison for either the 2002 or 2003 X-ray. For example, Dr. Afzal Ahmed and Dr. Alan Repsher gave conflicting interpretations of the 2003 X-ray, but the ALJ did not determine which doctor was more qualified. Moreover, the ALJ inexplicably compared the qualifications of Dr. Cohen and Dr. Repsher, two doctors who never read the same X-ray, but such a comparison adds nothing unless those experts read the same X-ray.

The ALJ also impermissibly substituted his own opinion for that of the medical experts by concluding--without citing to any doctor's report--that Sprague's lung impairment was more likely due to smoking, and not coal mining. *See Zeigler Coal Co. v. Kelley*, 112 F.3d 839, 841 (7th Cir. 1997). The cause of Sprague's disease is a medical determination, which depends on his medical history, the particular nature of any opacities in his lungs, and his exposure to cigarette smoke and coal mine dust. *Cf. Compton v. Inland Steel Coal Co.*, 933 F.2d 477, 482-83 (7th Cir. 1991) (noting that cause of miner's total disability is medical, not legal, determination). Instead of relying on his own "common sense," the ALJ should have determined whether Dr. Cohen's report diagnosing pneumoconiosis was more or less credible than the doctors who did not diagnose pneumoconiosis. *See Ziegler Coal Co. v. Office of Workers' Comp. Progs.*, 490 F.3d 609, 616-17 (7th Cir. 2007).

Furthermore, in supporting his conclusion, the ALJ assumed that COPD is caused less frequently by coal dust exposure than by smoking, but that assumption is not supported by substantial evidence. The ALJ apparently misunderstood the significance of certain studies cited by Dr. Cohen: the ALJ interpreted Dr. Cohen's review of the studies about coal dust exposure to mean that COPD is caused less frequently by coal dust exposure than by smoking, but Dr. Cohen regarded exposure to coal dust to be as significant as exposure to smoking. What's more, the ALJ may have erred by overrelying on an unsubstantiated statistic from a report by one of Freeman's experts—that "1 in 5 heavy cigarette smokers will develop COPD, whereas less than 1 in 100 never-smoking coal miners develop COPD." This statistic seems to conflict with findings by the Department of Labor showing that coal mining exposure is similar to cigarette smoking in contributing to chronic bronchitis and emphysema, two obstructive lung diseases. *See* 65 F.R. 79920, 79937-

45 (refuting claims that coal mine dust does not cause obstructive lung disease); *see also Consolidation Coal*, 521 F.3d at 726 ("The medical authority indicates that nonsmoking miners develop moderate and severe obstruction at the same rate as smoking miners.").

In addition, when the ALJ concluded that Sprague's COPD was due to smoking, he also made a legal error by not addressing whether Sprague's COPD was "significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R. § 718.201(a)(2), (b). Even if Sprague's smoking contributed to his COPD, he is still entitled to benefits if mining also contributed to it. *See Midland Coal Co. v. Dir., Office of Workers' Comp. Programs*, 358 F.3d 486, 494-96 (7th Cir. 2004); *Shelton v. Dir., Office of Workers' Comp. Programs*, 899 F.2d 690, 693 (7th Cir. 1990).

Finally, Sprague asks for a different ALJ on remand based on the ALJ's apparent bias against Sprague's claim. We agree and urge the Director to assign a new ALJ to take a fresh look at the evidence. *See Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003); *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).

The BRB's order is VACATED and the case is REMANDED for further proceedings.