In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-1653

RAG AMERICAN COAL COMPANY,

*Petitioner,*

*v.*

OFFICE OF WORKERS' COMPENSATION PROGRAMS,

*Respondent,*

and

JIMMIE D. BUCHANAN,

*Intervening Respondent.*

Petition for Review of an Order of
the Benefits Review Board.
No. 06-BLA-0967

ARGUED JANUARY 14, 2009— DECIDED AUGUST 5, 2009

Before CUDAHY, KANNE, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* Jimmie D. Buchanan worked in Indiana coal strip mines for 20 years, enduring the constant exposure to dust customary for that line of work. He now suffers from substantial pulmonary/respiratory

problems. He filed two claims for benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901-945. His first claim was denied. On his second claim, he was awarded benefits. RAG American Coal Company (RAG) petitions for review of the order of the Benefits Review Board (Board), affirming the award. RAG contends that res judicata bars his second claim. We affirm.

## I. Background

In 1993, Jimmie D. Buchanan filed an application for black lung benefits. He claimed that he had lung disease caused by inhalation of coal dust. He had worked in coal mines for 20 years. He also smoked cigarettes for 36 years, averaging about one pack per day until cutting back during his last year as a miner, quitting entirely in 1994. In defending the claim, the employer contested that Buchanan had pneumoconiosis, that he was totally disabled, and that his disability was due to pneumoconiosis.[1]

On July 27, 1996, Administrative Law Judge (ALJ) J. Michael O'Neill issued his decision and order, denying benefits. He concluded that the record established that Buchanan stopped working because of his back condition

---

[1] AMAX Coal Company originally was identified as the employer. As in most industries, coal mining has undergone a series of mergers and acquisitions in recent years and the employer is now identified as RAG American Coal Company. We will refer to the employer as RAG in this opinion.

and he was totally disabled due to his back injury. He also found that Buchanan had a pulmonary impairment which precluded him from working. The ALJ determined that Buchanan did not have pneumoconiosis, however. In so doing, he gave greater weight to the opinions of Drs. Peter Tuteur and Frank Taylor that Buchanan's emphysema and bronchitis were caused by cigarette smoking than to the opinions of Drs. Dan Combs and William Houser that exposure to coal mine dust was a significant factor in Buchanan's lung impairment. ALJ O'Neill found that "[e]xposure to coal mine dust was neither a sufficient nor necessary cause of [Buchanan's] pulmonary disability" and that "pneumoconiosis is not a necessary cause of his disability." He concluded: "[E]ven if the claimant had never worked in surface coal mines . . . , he would be disabled today because of cigarette-smoke-induced emphysema and bronchitis, together with chronic back pain and somewhat limited range of motion." The ALJ thus determined that Buchanan failed to establish that he was totally disabled due to pneumoconiosis. On July 18, 1997, the Board affirmed the ALJ's decision. Buchanan took no further action on his first claim.

In August 1998, Buchanan filed a second claim for benefits. In defending the claim, RAG argued that Buchanan was not totally disabled by pneumoconiosis. On May 20, 2002, ALJ Rudolf L. Jansen issued his decision and order, awarding benefits. He considered the evidence developed after the Board's decision on Buchanan's first claim to determine whether Buchanan had shown that his condition had substantially worsened so as to entitle him to benefits. This included ten additional x-rays with

numerous interpretations, two of which were positive for pneumoconiosis; five additional pulmonary function studies; and four additional arterial blood gas studies. It also included a report of an examination of Buchanan by internist Dr. Reynoldo Carandang from December 2, 1998; a consulting report and supplement by Dr. Robert Cohen, dated April 28, 1999, and November 6, 2000, respectively; a June 17, 1999 examination and opinion by Dr. Jeff W. Selby; progress notes from Dr. Stephen Shoemaker, Buchanan's family physician; hospital records from 2000; several progress reports dated from 1999 to October 2000, from Dr. Houser, Buchanan's treating pulmonologist; and consulting reports completed by Drs. Gregory Fino and Tuteur, board-certified pulmonologists, Dr. Joseph Renn, a pulmonary specialist, and Dr. David Hinkamp, board-certified in preventative medicine and occupational disease. Both Drs. Carandang and Houser opined that Buchanan suffered from a pulmonary disease that had arisen, in part, from his past coal dust exposure. In contrast, Drs. Selby, Fino, Tuteur, and Renn concluded that Buchanan's disabling pulmonary impairment was unrelated to his coal mine employment.

Giving greater weight to the opinions of Drs. Houser, Carandang, and Cohen and less weight to the opinions of Drs. Renn, Tuteur and Fino, ALJ Jansen found that Buchanan had established the existence of pneumoconiosis, thus showing a material change in his condition. The ALJ assigned the greatest weight to Dr. Houser's opinion based on his specialty in pulmonology, his familiarity with Buchanan's pulmonary condition due to his treatment of Buchanan since 1992, and the recency of his

examination and report. In addition, he explained that Dr. Houser's reports and Dr. Cohen's opinions were well-documented and well-reasoned. The ALJ weighed Dr. Carandang's opinion favorably, in part, because he had examined Buchanan since the denial of his earlier claim, and the ALJ found the opinions of Drs. Cohen, Shoemaker, and Hinkamp supportive of Dr. Houser's diagnosis and conclusions.

The reports and opinions of Drs. Fino, Tuteur, and Renn were assigned less weight for two reasons. First, they relied on medical studies and literature which indicated that pneumoconiosis seldom arose in an obstructive disease and that in miners who were long-term smokers, any obstructive disease resulted from only tobacco smoke, not coal dust exposure. The ALJ found that this view had been rejected by this court as contrary to the prevailing view of the medical community and sub-stantial weight of the medical and scientific literature, citing *Freeman United Coal Mining Co. v. Summers*, 272 F.3d 473, 483 n.7 (7th Cir. 2001). The second reason for giving these consultants' opinions less weight was that they were less familiar with Buchanan's pulmonary condition than Dr. Houser.

ALJ Jansen determined, based on Dr. Shoemaker's reports and opinions and Dr. Houser's and Dr. Cohen's opinions, that Buchanan's pulmonary condition had progressively and substantially worsened over the last four or five years. The ALJ relied, in part, on Dr. Shoe-maker's notations of Buchanan's frequent, recent hospital-izations, which showed he had several "acute" exacerba-

tions of his chronic pulmonary disease. ALJ Jansen found that Buchanan had established total disability due to pneumoconiosis and thus awarded him benefits commencing August 1, 1998.

RAG petitioned the Board for review, and the Board affirmed in part, vacated in part, and remanded. On July 22, 2004, ALJ Jansen again issued an order awarding benefits. RAG sought reconsideration. On reconsideration, ALJ Jansen reiterated that ALJ O'Neill had determined that the evidence failed to establish pneumoconiosis and that Buchanan had demonstrated a material change in condition by showing that he had pneumoconiosis. ALJ Jansen also found a material change in Buchanan's proof of total disability, indicating that Buchanan's respiratory impairment had worsened in recent years. RAG appealed. The Board affirmed in part, reversed in part, and remanded so the ALJ could reassess the medical opinions of Drs. Fino and Tuteur.

On August 25, 2006, ALJ Jansen issued his decision and order on remand, again awarding benefits. The ALJ weighed the medical opinions, assigning less weight to the opinions of Drs. Fino and Tuteur because he found them not well-reasoned and in tension with the Department of Labors's (DOL) findings regarding coal dust exposure and obstructive lung disease. ALJ Jansen found that Buchanan had pneumoconiosis and had established a material change in conditions. The ALJ also found that Buchanan demonstrated that he was totally disabled due to pneumoconiosis arising out of coal mine employment. RAG appealed to the Board, which affirmed.

RAG moved for reconsideration; the motion was denied on January 18, 2008, and RAG petitioned this court for review.

## II. Discussion

In challenging the award of benefits, RAG makes three arguments. RAG first contends that Buchanan's second claim is barred by res judicata. RAG next challenges ALJ Jansen's finding that Buchanan established a "material change in conditions." And, third, RAG suggests that the refusal to apply ordinary principles of finality denied it due process of law. We review questions of law de novo. *Midland Coal Co. v. Dir., Office of Workers' Comp. Programs*, 358 F.3d 486, 489 (7th Cir. 2004). We review the ALJ's decision to determine if it is rational, supported by substantial evidence, and consistent with controlling law. *Consolidation Coal Co. v. Dir., Office of Workers' Comp. Programs*, 521 F.3d 723, 725 (7th Cir. 2008). In doing so, we accept the ALJ's factual findings if supported by substantial evidence in the record as a whole. *Id.*

Buchanan may avoid the res judicata effect of the denial of his earlier claim, if he establishes "that there has been a material change in conditions." 20 C.F.R. § 725.309(c) (1999);[2] *see also Peabody Coal Co. v. Spese*, 117 F.3d 1001, 1007 (7th Cir. 1997) (en banc) ("By requiring denial of a second

---

[2] Though § 725.309 has been revised, we refer to the version in effect when Buchanan filed his second claim for benefits and which applies to his claim.

application unless there has been a material change in conditions, the regulation gives res judicata effect to the first decision."); *Midland Coal*, 358 F.3d at 489-90 (stating that "traditional principles of *res judicata* do *not* bar a subsequent application for black lung benefits where a miner demonstrates a material change in at least one of the conditions of entitlement"). To show a material change, the claimant cannot merely present new evidence regarding his condition at the time of the earlier denial. *Id.* at 491; *Spese*, 117 F.3d at 1008. Rather, he "must show that something capable of making a difference has changed since the record closed on the first application." *Spese*, 117 F.3d at 1008. Thus, "[i]f the earlier denial listed both a failure to show pneumoconiosis and a failure to show total disability, the claimant can avoid automatic denial of his claim on res judicata grounds by showing a material change in either of those elements." *Id.* at 1009. Accordingly, traditional principles of res judicata do not bar Buchanan's second claim, as long as he has demonstrated a material change in his condition.

That brings us to the next issue: whether Buchanan established a material change in his condition. ALJ Jansen found that he did. RAG challenges that finding. A claimant can establish a material change by establishing either (1) that he "did not have black lung disease at the time of the first application but has since contracted it and become totally disabled by it" or (2) that "his disease has progressed to the point of becoming totally disabling although it was not at the time of the first application." *Id.* at 1107 (quoting *Sahara Coal Co. v. Office of Workers' Comp. Programs*, 946 F.2d 554, 556 (7th Cir. 1991)); *see also Midland*

*Coal*, 358 F.3d at 493. The ALJ's finding of a material change in condition is a factual determination that we review only for substantial evidence. *See Midland Coal*, 358 F.3d at 493.

ALJ Jansen's finding that Buchanan showed a material change in his condition was supported by substantial evidence in the record. The ALJ found that Buchanan proved that he had pneumoconiosis. He also found that Buchanan's pulmonary disease had progressively and substantially worsened since the denial of his first claim, such that he established total disability due to pneumoconiosis.

The finding of pneumoconiosis was based on the well-documented and well-reasoned medical opinions of Dr. Houser, Buchanan's treating pulmonologist, Dr. Carandang, board certified in internal medicine, and Dr. Cohen, board certified pulmonary specialist. Both Drs. Carandang and Houser, who examined Buchanan since the denial of his first claim, opined that Buchanan suffered from a pulmonary disease, including pneumoconiosis, that had arisen, in part, from his past coal dust exposure. Specifically, in November 2000, Dr. Houser reviewed Buchanan's medical records going back to August 1998, including office visits, hospitalizations, pulmonary function tests, and arterial blood gas studies. Dr. Houser concluded that Buchanan had a disabling respiratory impairment which included coal workers' pneumoconiosis, category 1, chronic obstructive pulmonary disease (severe), chronic bronchitis, and emphysema. He also stated that Buchanan's chest radiograph showed

category 1 pneumoconiosis and that his pneumoconiosis was related to his coal mine employment. Similarly, Dr. Carandang believed that Buchanan suffered from coal workers' pneumoconiosis and severe obstructive lung disease caused by his tobacco use and coal mine employment. He also believed that Buchanan would be unable to work in coal mine employment because of his impaired lung function. And Dr. Cohen, board certified in pulmonology, gave a consulting opinion in which he opined that Buchanan suffered from coal workers' pneumoconiosis as well as severe chronic obstructive pulmonary disease which resulted from both his coal dust exposure and cigarette smoking. In Dr. Cohen's judgment, Buchanan did not have the pulmonary capacity to perform his last coal mine job.

Both Dr. Houser's and Dr. Shoemaker's records support a finding that Buchanan's pulmonary disease progressively worsened since the denial of his first claim. In early 1999, Dr. Houser noted that Buchanan's respiratory condition was "fairly stable" and "essentially unchanged," but in May 1999, he also noted Buchanan's complaints of dyspnea[3] at night. Then, in January 2000, Dr. Houser noted that Buchanan was having "some exacerbation of respiratory symptoms," with "increased cough and shortness of breath, plus some sputum produc-

---

[3] Dyspnea is difficulty in breathing or shortness of breath. MedicineNet.com, Definition of Dyspnea, http://www.medterms.com/script/main/art.asp?articlekey=3145 (last visited July 17, 2009).

tion." On February 13, 2000, Dr. Shoemaker admitted Buchanan to the hospital for an "[a]cute exacerbation of chronic obstructive pulmonary disease" and bronchopneumonia. Buchanan was experiencing shortness of breath with wheezing and some crackles throughout his lungs. His lungs were tight and he had poor air exchange. Buchanan was given steroids, oxygen, and aerosol treatments and was discharged one week later in an improved condition. In early May 2000, Dr. Houser indicated that Buchanan was having problems with increasing dyspnea, that pulmonary function tests and a spirometry showed "severe airway obstruction with no response to bronchodilator administration" and that Buchanan's FEV1 had decreased from 30% to 27% since November 1998. The doctor recommended pulmonary rehabilitation, including an inpatient program. On May 18, Dr. Shoemaker admitted Buchanan to the hospital for shortness of breath and diagnosed him with pneumonia and acute exacerbation of chronic obstructive pulmonary disease. Buchanan was again treated with steroids and breathing treatments. On May 29, 2000, Buchanan was admitted to an inpatient pulmonary rehabilitation program. He was discharged on June 6, 2000, in an improved condition. Later that month, Dr. Houser observed that Buchanan seemed to be doing "fairly well" and in October 2000, noted that Buchanan said he was feeling better and had improved since the rehab program. Nonetheless, at that time, Buchanan's chest exam showed diminished breath sounds, a prolonged expiratory phase, and his oxygen saturation on room air was only 90%.

Dr. Houser's and Dr. Cohen's opinions further support the conclusion that Buchanan's pulmonary condi-

tion had worsened. Dr. Houser reviewed Buchanan's pulmonary function tests from 1997, 1998, and 2000, all of which showed severe airway obstruction. He also reviewed arterial blood gas studies from June 17, 1999, and indicated that they showed "severe hypoxemia," with a PO2 of 54 on exercise and oxygen saturation of 87.6%, below the 88% level which would qualify a person for home oxygen under Medicare guidelines. According to Dr. Houser, these values indicated that Buchanan needed supplemental oxygen on exercise. Dr. Cohen noted that 1999 arterial blood gas tests showed a worsening of Buchanan's lowered gas exchange with exercise and that those tests were stopped due to "extreme dyspnea." He also indicated that Buchanan developed hypoxemia with exercise,[4] which progressively worsened from December 1998 to June 1999, when he described severe hypoxemia on exercise.

We note as well that in comparing Buchanan's pulmonary function test results from December 1998 to December 1993, Dr. Carandang noted a "marked decrease" in the DLCO—"the diffusing capacity of the lung for carbon monoxide." MedlinePlus, Medical Encyclopedia, http://www.nlm.nih.gov/medlineplus/ency/article/

---

[4] Hypoxemia is a low level of oxygen in the blood, the main symptom of which is shortness of breath. An arterial blood test measures blood oxygen. Normal values are between 95 and 100 percent at sea level. Values under 90 are low; severe hypoxemia occurs when saturation is below 80 percent. MayoClinic.com, Hypoxemia, http://www.mayoclinic.com/health/ hypoxemia/MY00219 (last visited July 17, 2009).

003854.htm (last visited July 17, 2009). He also observed a decline in Buchanan's arterial blood gas test results from December 1993 to December 1998. And Dr. Hinkamp agreed that "[t]here is no doubt that [Buchanan's] gas exchange abnormalities worsened over the years." Dr. Renn likewise noted that the arterial blood gas studies showed a worsening of Buchanan's condition from 1993 to August 1997 and December 1998. He also indicated a decline in Buchanan's condition demonstrated by pulmonary function studies, from 1982 (normal), 1990 (showing a "severe, significantly bronchoreversible obstructive ventilatory defect"), and 1997 and 1998 (showing a "very severe, significantly bronchoreversible obstructive ventilatory defect"). ALJ Jansen did not specifically rely on these opinions in finding that Buchanan's pulmonary condition had progressively worsened. We mention them here only to show that the ALJ's conclusion is supported by even more evidence than he actually cited.

Furthermore, the record supports the finding that Buchanan's back condition, though once totally disabling, had improved to the point at which it was no longer the source of his total disability. Subsequent to the denial of his first claim, Buchanan underwent two surgeries on his back, after which his back condition improved. After the second surgery, Dr. Houser indicated that most of Buchanan's physical limitations, except those related to sitting, were due primarily to chronic obstructive pulmonary disease and that there was no indication that his treadmill exercise performance was affected by his back problem. The record contains not a single medical opinion that after the second surgery, Buchanan was totally disabled by his back condition.

Buchanan has demonstrated that "something capable of making a difference has changed since the record closed on the first application," *Spese*, 117 F.3d at 1008. That something is that he now has pneumoconiosis and his chronic pulmonary disease has progressively and substantially worsened to the point that he is now totally disabled by pneumoconiosis.

None of RAG's arguments lead us to a different conclusion. RAG claims that Buchanan was totally disabled due to emphysema and bronchitis[5] when he litigated and lost his first claim for benefits. However, in the first claim, RAG maintained that Buchanan was totally disabled because of his lower back condition and wasn't disabled on a pulmonary or respiratory basis. Buchanan and the Director argue that RAG should be judicially estopped from arguing that Buchanan was totally disabled by his respiratory impairment at the time of his first claim. We could hold that judicial estoppel bars any argument by RAG that Buchanan was totally disabled by emphysema and bronchitis at the time of his first claim. *See Pakovich v. Broadspire Servs., Inc.*, 535 F.3d 601, 606 n.2 (7th Cir. 2008) ("[J]udicial estoppel provides that when a party *prevails* on one legal or factual ground in a lawsuit, that party cannot later repudiate that ground in subsequent litigation based on the underlying facts." (quotation omitted, emphasis in *Pakovich*)). RAG did argue in Buchanan's

---

[5] RAG uses COPD (chronic obstructive pulmonary disease), emphysema and bronchitis, and respiratory disease somewhat interchangeably.

first claim that he was *not* totally disabled due to his pulmonary/respiratory impairment—and ALJ O'Neill agreed, finding him totally disabled due to his back injury.

But RAG's res judicata argument really rests on its view that Buchanan should not be allowed to relitigate the *cause* of his pulmonary/respiratory impairment. *See, e.g.*, Pet'r's Br. at 15 ("This appeal seeks to restore principles of finality as a bar to a successive black lung claim where the dispositive issue raised in the litigation—the source of a claimant's pulmonary or respiratory impairment—is not subject to change and has already been adjudicated . . . ."). Whether or not Buchanan was totally disabled due to a pulmonary/respiratory impairment at the time of his first claim is somewhat beside the point of RAG's argument here. Even if judicial estoppel were applied, Buchanan need not rely on this bar to prevail given the substantial evidence of a material change in his condition, including that he had developed pneumoconiosis, which ALJ O'Neill found Buchanan had not established in deciding the first claim.

As RAG asserts, ALJ O'Neill concluded that Buchanan's emphysema and bronchitis were caused solely by cigarette smoking, not coal dust exposure. RAG argues that Buchanan was allowed to relitigate the cause of his emphysema and bronchitis. This leads right into RAG's sideswipe at the conclusion (both the DOL's and ours) that pneumoconiosis is progressive and latent. *See Zeigler Coal Co. v. Office of Workers' Comp. Programs*, 490 F.3d 609, 618-19 (7th Cir. 2007) ("We previously have held that both the latency and progressivity of coal workers' pneumoconiosis

are legislative facts."); *Spese*, 117 F.3d at 1010 (stating that "the question whether simple pneumoconiosis can progress in the absence of further exposure to coal dust is a question of legislative fact" and noting that the Benefits Review Board found "it has long been held that pneumoconiosis is a progressive and irreversible disease" (quotation omitted)). RAG gives us no good reason to revisit that view here.

We note, however, that a report of the Surgeon General indicates that "simple" pneumoconiosis "does not progress in the absence of further exposure." Surgeon General, U.S. Dep't of Health & Human Servs., The Health Consequences of Smoking: Cancer and Chronic Lung Disease in the Workplace 294 (1985). For support, the report cites articles from 1961, 1955, and 1974. On the other hand, in support of its conclusion that pneumoconiosis is progressive, the DOL cites numerous authorities created *after* 1985. See Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, as amended, 65 Fed. Reg. 79920, 79971 (Dec. 20, 2000); 64 Fed. Reg. 54966, 54978-79 (Oct. 8, 1999); 62 Fed. Reg. 3338, 3343-44 (Jan. 22, 1997). Obviously, the Surgeon General could not have considered these more recent authorities back in 1985. Besides, none of the enumerated "summary and conclusions" in the Surgeon General's report addresses whether pneumoconiosis is latent or progressive. RAG argues that the 1985 report is not outdated, directing us to a more recent report in which the Surgeon General updated the conclusions reached in prior reports. Ctrs for Disease Control & Prevention, U.S. Dep't of Health & Human Servs., The Health Consequences of Smoking: A Report of

the Surgeon General (2004), http://www.cdc.gov/tobacco/
data_statistics/sgr/2004/index.htm. None of the conclusions
from the 1985 report summarized in the 2004 report
concern the latency or progressivity of pneumoconiosis,
however. *See id.* at 465-66.

The fact that pneumoconiosis may be progressive and
latent justifies allowing a subsequent claim even
without additional coal dust exposure since the denial of
the earlier claim. Regulations Implementing the Federal
Coal Mine Health and Safety Act of 1969, as amended, 62
Fed. Reg. 3338, 3343-44 (Jan. 22, 1997). Because pneumoco-
niosis can be progressive and latent, ALJ Jansen's deter-
mination that Buchanan's pneumoconiosis was caused in
part by coal dust exposure did not necessarily revisit the
earlier determination of the cause of Buchanan's pulmo-
nary impairment. Because ALJ O'Neill found that Bu-
chanan did not have pneumoconiosis, he did not decide
what caused the alleged pneumoconiosis. Thus, Bu-
chanan's second claim did not seek to relitigate the
cause of his pneumoconiosis.

RAG's assertion that ALJ Jansen's decision was not based
on a change in Buchanan's condition, but merely reflects
disagreement with ALJ O'Neill's decision concerning
the source of Buchanan's lung disease is not supported by
the record. RAG identifies Drs. Houser, Cohen, Hinkamp,
and Carandang as having opinions about Buchanan's
lung disease that did not change over time. It is not
surprising that the doctors who believed that Buchanan's
lung disease was due to coal dust exposure in the first
claim still believed that it was caused by coal dust expo-

sure in the second claim. But this does not require that ALJ Jansen reject their opinions. *See Midland Coal*, 358 F.3d at 493 (stating that the physician's opinion that claimant had some degree of pneumoconiosis all along was not necessarily dispositive where there was substantial evidence to show a material change in the total disability element).

In *Spese*, we clarified that a claimant need not negate every alternative ground on which an earlier denial was based. 117 F.3d at 1008. This, we said, was "consistent with general principles of issue preclusion, under which holdings in the alternative, either of which would independently be sufficient to support a result, are not conclusive in subsequent litigation with respect to either issue standing alone." *Id.*; *see also Midland Coal*, 358 F.3d at 493; Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, as amended, 65 Fed. Reg. 79920, 79973 (Dec. 20, 2000) ("Where [a] finding was not essential to the original denial of benefits, because the ALJ ultimately denied benefits on another basis, or used alternative bases, issue preclusion would not prevent a second factfinder from making a different finding, based on his independent weighing of the evidence, in connection with an additional claim."). ALJ O'Neill denied Buchanan's earlier claim both because he found Buchanan had not shown pneumoconiosis and because he found that Buchanan was not totally disabled due to pneumoconiosis. Because ALJ O'Neill's denial was based on these alternative holdings, neither is conclusive in Buchanan's second claim with respect to the other standing alone. Thus, ALJ Jansen could, consistent with

principles of issue preclusion, independently consider and weigh the opinions of Drs. Houser, Cohen, Hinkamp, and Carandang to determine such matters as the cause of Buchanan's pulmonary condition, whether he has shown pneumoconiosis, and whether he is now totally disabled due to pneumoconiosis.

And ALJ Jansen did consider and weigh the medical opinions. As we have said, "weighing conflicting medical evidence is precisely the function of the ALJ as fact-finder." *Consolidation Coal Co.*, 521 F.3d at 726 (quotation omitted). ALJ Jansen gave greater weight to the opinions of Drs. Houser, Carandang, and Cohen and less weight to the opinions of Drs. Renn, Tuteur and Fino, and he gave good reasons for doing so. It is not up to us to reweigh the medical evidence. And ALJ Jansen had medical findings subsequent to the earlier denial to consider along with the prior medical history. We are asked to decide whether the ALJ's decision is supported by substantial evidence in the record. Having considered the record, we conclude that ALJ Jansen's determination that Buchanan has shown a material change in his condition is supported by substantial evidence.[6]

Having decided that the ALJ's decision regarding a material change in conditions is supported by substantial evidence, we move on to consider Buchanan's entitlement

---

[6] RAG's claim that the refusal to apply ordinary principles of finality denies it due process of law is nothing more than a variation of its res judicata argument which we have already addressed.

to black lung benefits. In addition to demonstrating a material change in conditions, Buchanan must also establish three elements to prove entitlement to benefits: that (1) he is totally disabled (2) by pneumoconiosis (3) arising at least in part out of coal mine employment. *Id.* at 725. RAG has not challenged ALJ Jansen's findings that Buchanan proved these elements. Therefore, it waived any challenge to these findings. *Capitol Indem. Corp. v. Elston Self Serv. Wholesale Groceries, Inc.*, 559 F.3d 616, 619 (7th Cir. 2009) (failure to develop argument to dispute finding made below results in waiver of argument on appeal).

Even if RAG had challenged these findings, its efforts would fail because these findings are supported by substantial evidence in the record as a whole. The opinions of Drs. Houser, Carandang, Cohen, and Shoemaker support ALJ Jansen's finding that Buchanan is totally disabled by pneumoconiosis caused at least in part by coal mine employment. While there are other medical opinions that differ, ALJ Jansen gave a reasoned explanation for crediting the opinions that he did. We see no reason to disturb his weighing of the evidence.

### III.

The decision awarding benefits is AFFIRMED.